**Beoria Abraham SIMMONS, II, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, Appellee.**

No. 1989–SC–0736–MR.

Supreme Court of Kentucky.

Feb. 23, 2006.

Rehearing Denied June 15, 2006.

David M. Barron, John Palombi, Assistant Public Advocates, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Louis F. Mathias, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Jefferson Circuit Court which denied the motion by Simmons for RCr 11.42 relief. Originally, Simmons was convicted of three counts of first-degree murder, three counts of first-degree rape, one count of attempted murder, one count of attempted rape, and four counts of kidnapping. He was sentenced to death for each of the murders and for three counts of kidnapping; twenty years for the attempted murder; ten years for the attempted rape; and twenty years for the fourth kidnapping count. His convictions and sentences were affirmed on direct appeal. *Simmons v. Commonwealth*, 746 S.W.2d 393 (Ky.1988). Thereafter, he filed an RCr 11.42 motion requesting the trial court to vacate his convictions. After a 9–day evidentiary hearing, the trial judge denied the RCr 11.42 motion.

In this appeal, Simmons raises 15 assignments of alleged error arising out of the denial of the RCr 11.42 motion. We shall review each of the issues presented.

## Standard of Review

We believe it is again useful to set out the standard of review of claims raised in a collateral attack pursuant to RCr 11.42, alleging ineffective assistance of counsel at the original trial. Such a motion is limited to issues that were not and could not be raised on direct appeal. An issue raised and rejected on direct appeal may not be relitigated in this type of proceeding by simply claiming that it amounts to ineffective assistance of counsel. *Haight v. Commonwealth*, 41 S.W.3d 436 (Ky.2001), which cites *Sanborn v. Commonwealth*, 975 S.W.2d 905 (Ky.1998), as well as other decisions of this Court.

The standards which measure ineffective assistance of counsel are set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky.1985). In order to be classified as ineffective, the performance of counsel must be below the objective standard of reasonableness and so prejudicial as to deprive a defendant of a fair trial and a reasonable result. *Strickland, supra.* "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222 (6th Cir.1992). The critical issue is not whether counsel made errors, but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory. *Morrow, supra.* The purpose of RCr 11.42 is to provide a forum for known grievances, not to provide an opportunity to research for such grievances. *Gilliam v. Commonwealth*, 652 S.W.2d 856 (Ky.1983).

In reviewing a claim of ineffective assistance, the court must focus on the totality of evidence before the judge or jury and assess the overall performance of counsel throughout the case in order to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable professional assistance. *See Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Morrow; Haight, supra.* A defendant is not guaranteed errorless counsel or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance. *Haight; See also McQueen v. Commonwealth*, 949 S.W.2d 70 (Ky.1997).

*Strickland* notes that a court must indulge a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance. The right to effective assistance of counsel is recognized because of the effect it has on the ability of the accused to receive a fair trial.

The movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by post-conviction proceeding. *Haight, citing Dorton v. Commonwealth*, 433 S.W.2d 117 (Ky. 1968). A reviewing court must always defer to the determination of facts and witness credibility made by the circuit judge. *Haight; Sanborn, supra; McQueen v. Commonwealth*, 721 S.W.2d 694 (Ky.1986).

This Court has also held that an RCr 11.42 motion must set forth all the facts necessary to establish existence of a constitutional violation and that the court will not presume that facts omitted from the motion establish existence of such a violation. *Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky.2002). *See also Hodge v. Commonwealth*, 116 S.W.3d 463 (Ky.2003). A convicted defendant claiming ineffective

assistance of counsel has the burden of: 1) identifying specific errors by counsel; 2) demonstrating that the errors by counsel were objectively unreasonable under the circumstances existing at the time of trial; 3) rebutting the presumption that the actions of counsel were the result of trial strategy; and 4) demonstrating that the errors of counsel prejudiced his right to a fair trial. *See Strickland.* That case states that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688–89, 104 S.Ct. 2052.

A careful review of all the questions raised indicates that the circuit judge correctly rejected all of the claims by Simmons following the nine-day evidentiary hearing and properly overruled his RCr 11.42 motion. Simmons has failed to demonstrate that his counsel was ineffective, that he did not receive a fundamentally fair trial, or that any other grounds warrant the relief requested.

The specific facts involved in the original trial are carefully set out in *Simmons, supra.* Simmons was represented by Daniel T. Taylor, III.

## I. Dehumanizing of Simmons

■■■ Simmons claims that his defense counsel at trial showed distaste for him by repeatedly dehumanizing him to the jury. He asserts that such actions violated the duty of defense counsel of zealous advocacy and deprived him of the right to effective assistance of counsel under both the federal and state constitutions. We must disagree.

During opening statement, the prosecution detailed the 12–count indictment against Simmons which had charged him with rape, kidnapping and murder of three different women, and attempting to kidnap, rape and murder an additional underage victim. The prosecution gave an explicit description of the details regarding each crime and set out considerable forensic evidence which it intended to present. In addition, there was a confession from Simmons, which although challenged, was not suppressed, and a positive identification by the one surviving victim.

A careful review of the record indicates that attorney Taylor was a very zealous advocate and when faced with the overwhelming evidence of guilt, selected a trial strategy that sought to keep Simmons from being executed. That strategy was to admit guilt and argue mental illness or insanity in an attempt to avoid a death sentence.

Almost all of the alleged dehumanizing references occurred in the opening statement by defense counsel. The clear theme to be presented to the jury was that the behavior of the defendant was due to mental illness rather than that he was inhuman. Considering the overwhelming evidence referred to in the opening statement by the prosecution, it was a valid trial strategy to admit guilt initially and begin the process of trying to build a case that the defendant was mentally ill and that his life was worth saving.

An admission of guilt also reduced some of the power of the prosecution's case as well as giving a sense of reasonableness to the defense position. The nature of the case was such that defense counsel had to use provocative language to describe Simmons and equate him to other notorious serial killers. The Taylor strategy was not intended to dehumanize Simmons, but rather to exhibit him as an extraordinary offender who could aid scientific research into what causes such aberrant human be-

havior. This could only be achieved if Simmons was spared the death penalty.

In closing arguments, the defense counsel repeated the concept of human dignity and that he in fact had chosen a higher road by not insulting the jury and trying to fight an impossible factual case. By acknowledging guilt and seeking mercy by virtue of mental illness, the strategy remained to save the life of the defendant. Defense counsel acknowledged that Simmons had committed "unspeakable acts" nearly beyond tolerance, but then immediately asked the jury to put aside the emotional part of the case and use an intellectual approach to their decision.

A review of the record indicates that Taylor limited his disparaging remarks to either opening or closing argument and there are no references that could be considered derogatory or dehumanizing in the body of the trial. He also expressed regret for the remark he made about this individual being a pitiable monster. The record reveals an experienced defense counsel trying to sell the jury the story that his client was sick and that he had visions and that a verdict of guilty but mentally ill would be appropriate. At the RCr 11.42 hearing, Taylor indicated that he did not adopt a trial strategy intending to dehumanize the defendant.

Analysis of the entire trial indicates that the derogatory remarks were limited and were used as part of a strategy to attempt to save the life of the defendant. No prejudice, either actual or presumed, arose and Simmons received a fair trial and did not have ineffective assistance of counsel. The behavior of defense counsel in this case indicates that it is significantly different from that involved in *Rickman v. Bell,* 131 F.3d 1150 (6th Cir.1997). The conduct here was not shocking and professionally outrageous. None of the elements involved in *Rickman, supra,* arose in this case. Thus, it is clearly distinguishable and actually serves to show why the representation here was not ineffective.

## II.  Conflict of Interest

■ Simmons argues that the monster image presented in the opening statement and the friendship of his counsel with his allegedly abusive parents adversely affected the ability of defense counsel to discover and present compelling mitigating evidence. Specifically, Simmons asserts that the extreme distaste for him created an actual conflict of interest that prevented Taylor from humanizing him and developing mitigating evidence. In addition, he claims that counsel's friendship with the Simmons family along with being paid by the parents resulted in a divided loyalty that adversely affected his defense. Thus, he contends he was deprived of his right to conflict free assistance of counsel. We disagree.

Counsel for Simmons continues to disagree with the strategy employed by trial defense counsel. The defense strategy at trial was to portray Simmons as a serial killer whose principal benefit to society would be saving his life for study rather than sentencing him to capital punishment. Defense counsel used provocative and sensational language regarding Simmons during his opening statement as well as closing arguments. Obviously, he did so in an attempt to save Simmons from a death sentence. The magnitude of the crimes demonstrates the reasonableness of such tactics. Defense counsel showed Simmons as a very human person. His loyalty to his client was not infringed upon by acknowledging the terrible circumstances of the crimes involved.

The allegations that defense trial counsel had a divided loyalty because he "became friends" with Simmons' family and was paid by the parents is without merit.

A review of the evidence indicates that the allegations are clearly misinterpreted and misconstrued and there is no indication that Simmons or his parents ever suggested an abnormal family life. It is interesting to note that the father did not know defense counsel prior to retaining him and could not remember his name when he testified at the RCr 11.42 hearing. The fact that the parents paid for the representation of their son in a case where the adult child is facing a death sentence is certainly to be expected. There is no evidence that defense counsel allowed the parents to make critical decisions in the case. The father testified that he did not share in the decision-making and that all decisions were made between counsel and the son after their consultation. Defense counsel testified that his obligation was to the son and not to the parents. In the circumstances of this case, the relationship between Taylor and the parents did not create any conflict of interest. *Cf. Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

### III. Unreasonable Strategy

Counsel for Simmons now argues that the defense offered an unreasonable strategy, presented harmful evidence and failed to develop and introduce mitigating evidence, particularly during the penalty phase of the trial. We disagree.

A careful examination of the record indicates that Taylor, an experienced criminal lawyer who had worked in the area of capital litigation, presented a reasonable strategy, albeit unsuccessful. The defense tried to have the jury view Simmons as an extraordinary and unique individual who was worthy of scientific study. It is reasonable to believe that the background of the defendant, contrasted with the horrible nature of his crimes, would intrigue the imagination of the jury to determine how

an apparently normal person could commit such heinous crimes. *See Waters v. Thomas*, 46 F.3d 1506 (11th Cir.1995), which concluded that the "spare him for science" argument was reasonable trial strategy.

The tactic now suggested on this appeal would have been completely contrary to the defense theory. The variety of alleged physiological, social and family problems do not amount to such mitigating evidence as would have been beneficial to Simmons and would have compromised the theory that could have saved his life. It is interesting to note that during deliberations the jury asked a question that indicated they may have been considering a sentence of life imprisonment.

The complaint by counsel about the lack of expert testimony is also unpersuasive. Reliance on experts from KCPC was not ineffective assistance of counsel. The argument that there was cumulative prejudice resulting from the errors of the defense is unconvincing. The mere fact that appellate counsel disagrees with the strategy and tactics employed by a veteran defense lawyer does not result in ineffective assistance by that counsel. The colorful behavior of defense counsel was solely intended to save the life of the accused.

### IV. Concession of Guilt

Simmons contends that he was denied effective assistance at trial when, despite a belief that he did not comprehend the ramifications of a guilty plea, defense counsel admitted guilt without ascertaining whether Simmons understood what the strategy would entail. We disagree.

As has been noted earlier, the strategy of defense counsel at trial was to admit guilt but try to save the defendant from execution. In order to avoid the death penalty, a concession of guilt when the evidence is overwhelming is not ineffective assistance of counsel. *See Florida*

*v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); *Sanborn.*

Defense counsel testified at the RCr 11.42 hearing that Simmons understood his options and realized what the defense would be, understood that he could testify but chose not to. Defense counsel also testified that he was attempting to "nudge just one member of the jury." Counsel's statement in opening that the defendant did not know what the defense would be was mere theatrics, again, in an attempt to influence just one member of the jury to accept his theory. Defense counsel specifically testified that Simmons knew what his defense was going to be, that he was repeatedly told, and that the ultimate goal was to save his life. An examination of the testimony of Simmons as to all the questions raised was limited and did not support any contention raised on this appeal.

The testimony of Simmons was vague in that his response to questions was usually answered by saying he did not recall. He did remember discussions about saving his life, and being informed that he could testify. He vaguely remembered discussing his being "saved for science." The parents could not recollect any discussions about strategy, but the mother indicated that Taylor may have discussed how he was going to defend the action. The father recalled that Taylor stated he was going to try as hard as he could to save the son's life, and the father also stated that he had memory problems. Simmons and his parents were present throughout the trial and the various hearings and no one expressed any concern about the strategy of the defense. Following the trial, Simmons sent a letter to Taylor thanking him and his staff for his efforts.

■■■ Finally, defense counsel did not shift the responsibility of the jury by mentioning that any sentencing decision was subject to appeal. The remark was simply to emphasize the importance of their decision and did not violate *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

### V. Mitigation Instruction

■■■ Simmons argues that his trial counsel was ineffective for failing to object to mitigation instructions that did not allow the jury to give effect to the mitigating evidence and created the ethical dilemma of which contradictory instruction to follow. This issue is completely without merit.

After listing a number of mitigating circumstances that could be considered, the mitigation instruction included a catch-all provision stating that the jury could consider "[a]ny other extenuating or mitigating circumstances that you may find to exist." The last component of the instruction then stated as follows:

> In addition to the foregoing, you shall also consider those aspects of the defendant's character and record, and those facts and circumstances of the particular offense(s) of which you will have found him guilty, about which he has offered evidence in mitigation of the penalties to be imposed upon him and which you believe from the evidence to be true.

The phrase "in addition to the foregoing," makes it abundantly clear that the last component of the instruction is to be considered along with the mitigation evidence discussed in the first part of the instruction. The jury instruction did not preclude the jury from considering any aspect of the defendant's character or record, nor any of the mitigating circumstances offered by Simmons. There was no error of any kind in the instruction.

### VI. Sentencing Jury Instructions

■■■ Simmons asserts that trial defense counsel was ineffective for failing to object

to sentencing instructions that shifted the burden of proof, created a presumption of death and even mandated death, when aggravators and mitigators are even. We disagree. The instructions were constitutionally proper and trial counsel was effective.

Simmons challenges Section 4(B) of the reasonable doubt instruction, which stated that "if upon the whole case you have a reasonable doubt whether the defendant should be sentenced to death, you shall recommend a sentence of imprisonment instead." The same instruction was found to be sufficient to allow the jury to fix a punishment of life imprisonment in *Parrish v. Commonwealth*, 121 S.W.3d 198 (Ky. 2003). *See also Perdue v. Commonwealth*, 916 S.W.2d 148 (Ky.1995); *Skaggs v. Commonwealth*, 803 S.W.2d 573 (Ky.1990); *Smith v. Commonwealth*, 599 S.W.2d 900 (Ky.1980).

■ Considering the instructions as a whole, they were constitutionally sufficient. The preamble of the instructions noted that the jury was able to fix four possible punishments: 1) life; 2) life without probation or parole for 25 years; 3) a term of 20 years or any number of years greater than 20, up to and including life; or 4) death. There is no violation of KRS 532.025. The instructions do not mandate death upon a finding that aggravators and mitigators were equal. The instructions permitted the jury to properly consider the particular mitigating circumstances of the defendant.

## VII. Jury Selection

Simmons alleges that the approach of trial counsel to voir dire was idiosyncratic, demonstrated no reasonable strategy and was highly damaging to his chance of receiving a sentence less than death. He states that trial counsel asked confusing questions throughout the examination of the jury that failed to elicit information helpful to determining whether a potential juror was qualified to serve. He claims that counsel failed to properly challenge the prosecution's racially discriminatory use of peremptory challenges and failed to request a change of venue. Upon careful review, we find that all of the questions raised are without merit.

Defense counsel testified at the evidentiary hearing that he believed it was a matter of judgment not to ask certain questions, observing that he did not want to lose more than he would gain. He did not want to do anything that would unnecessarily inflame the jury. His decision was based on his trial strategy which was to save the life of Simmons.

■ Simmons complains that Taylor failed to timely challenge the racially discriminatory use of peremptory challenges until after the jury was sworn. This Court reviewed that question on direct appeal and found the objection was not timely. A concurring opinion correctly noted that there was no basis for a *Batson* claim other than mere speculation because the Commonwealth did not strike all of the black jurors. *Simmons*. Moreover, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was not the law at the time of the trial in February, 1985. Defense counsel testified that at the time of the trial he followed the then existing law, that being *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The authority relied on by Simmons is unpersuasive.

■ Simmons also claims that trial counsel erred by failing to remove jurors who would automatically vote for the death penalty. None of the four jurors identified by Simmons indicated that they would not consider mitigating evidence and none in-

dicated that they would automatically vote for the death penalty.

■ The argument that a change of venue should have been obtained is without merit. At the evidentiary hearing, Taylor testified regarding his 31 years of trial experience and his familiarity with the other courts of northern and western Kentucky. Based on his experience and his trial strategy, he determined that Simmons would do better in Jefferson County because juries there tended to be more liberal and less death penalty oriented. We find no error.

A careful review of the lengthy and detailed jury examination indicates that there was no error and certainly no cumulative error. Simmons did not demonstrate any extensive pretrial publicity or any showing that the jurors were predisposed toward the death penalty.

## VIII. Unreasonable Strategy

Simmons maintains that defense counsel was ineffective for having an unreasonable trial strategy. He argues that presenting an insanity defense with no evidence supporting it and conceding the sufficiency of evidence claims on rape and kidnapping violated his right to an effective assistance. He recognizes that strategic decisions and insufficiency of evidence are not grounds for RCr 11.42 relief. However, he couches his argument to the effect that counsel was ineffective for basing his decision on intuition rather than a thorough investigation.

Once again, the strategy was based on 31 years experience as well as the particular facts of this case which indicated strong evidence of guilt. It is worth noting that the jury was instructed on both guilty but mentally ill and insanity. This Court has previously examined the evidence and found it sufficient to support both the rape and kidnapping charges. *Simmons.* This

claim cannot be raised in a collateral attack.

## IX. International Covenant

■ Simmons argues that his death sentence violated the "arbitrary deprivation of life" provisions of Article VI of the International Covenant on Civil and Political Rights. He asserts that this question cannot be waived because properly ratified treaties are supreme law. *Buell v. Mitchell,* 274 F.3d 337 (6th Cir.2001), observed that the International Covenant does not require its members to abolish the death penalty. As that court noted, the United States has agreed to abide by the covenant only to the extent that the 5th, 8th and 14th amendment ban cruel and unusual punishment. The court also observed that the agreement was not binding on courts of the United States.

In any event, the claim that he was deprived of his life arbitrarily is without foundation. He received a fundamentally fair trial in which a jury convicted him of capital murder. The jury verdict and sentence was affirmed by this Court and he has not been deprived of any legal right.

## X. Delay in Execution

■ Simmons now contends that executing him after a delay of 19 years constitutes cruel and unusual punishment. We find this argument incredible and without merit. Any delay was necessary to permit Simmons to fully exercise all of his rights to challenge his conviction and sentence. The record indicates that much, if not all, of the delay is attributable to Simmons in not doing anything to expedite the review of his case by the circuit court. Similar arguments have been rejected in *Sanborn.*

## XI. 50 Page Limit

■ The denial of the motion for an extension of page limits on his brief in the

RCr 11.42 action did not deny Simmons due process under either the state or federal constitution. Here, all of the material facts and legal arguments have been extensively presented in the pleadings, subsequent supplemental filings and in the briefs. There is no constitutional right to a certain number of pages in any appellate brief. *See Sanborn; see also Bowling v. Commonwealth,* 981 S.W.2d 545 (Ky.1998).

### XII. Conflicts on Appeal

Simmons complains that claims ordinarily raised on direct appeal must be permitted in a RCr 11.42 motion when trial counsel serves as direct appeal counsel because this creates an inherent conflict of interest that prevents raising claims that ordinarily would be raised on direct appeal. We disagree.

Trial defense counsel was one of the three direct appeal lawyers on behalf of Simmons. The three counsel on appeal raised 34 issues in a 161 page brief.

As noted by the circuit judge, the RCr 11.42 motion contains many of the same questions that were dismissed by this Court on direct appeal, or some variation. Some of the arguments are raised again under the guise of ineffective assistance of counsel. As such, they cannot be discussed again and the circuit judge determined that only the issues with possible merit should be considered. The conclusionary allegations made by Simmons do not demonstrate any prejudice. *Cf. Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). There is no error.

### XIII. Reopen Direct Appeal

■ There is no basis on which this Court could reopen the direct appeal simply because of an allegation that defense counsel at trial was so ineffective that the direct appeal amounted to no appeal at all. Simmons contends that the failure to re-open the direct appeal would mean that he has no avenue to present claims that call into question the reliability of his conviction and death sentence. We find no reason to overrule *Hicks v. Commonwealth,* 825 S.W.2d 280 (1992), which holds that this Court will not reexamine an appeal reviewed and decided by this Court. This Court previously denied the motion of Simmons to reopen his direct appeal. There is no reason to change that decision.

### XIII. All Ineffective Claims

■ Neither due process nor equal protection principles require that Simmons be allowed to raise all ineffective assistance of counsel claims in a collateral attack. RCr 11.42 motions are limited to the issues that were not and could not be raised on direct appeal. *Hodge, supra.* An issue raised and rejected on direct appeal may not be reconsidered in an RCr 11.42 proceeding by simply stating that it amounts to ineffective assistance of counsel. *Haight. See also Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). A collateral attack is not a substitute for appeal and the principles governing direct appeals are not applicable to such motions. *Hodge.* We decline to overrule *Haight.*

### XV. Cumulative Impact

The argument that cumulative impact of the alleged errors violates the constitutional rights of Simmons is without merit. The individual allegations of ineffective assistance of counsel presented here are not supported by fact and consequently have no cumulative effect whatsoever. *Sanborn. See also Campbell v. United States,* 364 F.3d 727 (6th Cir.2004).

There have been no violations of any federal or state constitutional provisions here. The claims presented do not under-

mine the reliability of the death sentence imposed.

The order of the circuit court denying RCr 11.42 relief is affirmed.

All concur.