RENDERED: MAY 26, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0904-MR

DEANGELO T. POLLARD                                        APPELLANT

v.
APPEAL FROM HENDERSON CIRCUIT COURT
HONORABLE KAREN L. WILSON, JUDGE
ACTION NO. 18-CR-00072

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Deangelo T. Pollard appeals *pro se* from the Henderson

Circuit Court's order denying his motion to vacate his sentence pursuant to

Kentucky Rule of Criminal Procedure (RCr) 11.42 and for an evidentiary hearing.

Finding no error, we affirm.

# FACTUAL AND PROCEDURAL HISTORY

Our Supreme Court set forth much of the relevant factual and

procedural history of this matter in *Pollard v. Commonwealth*, No. 2019-SC-0471-

MR, 2021 WL 1133848 (Ky. Mar. 25, 2021).

> In November 2017, Devin Fields, with a friend, Charles Olson, drove to Henderson, Kentucky. Olson testified that Fields' intent was to sell marijuana. Eventually, they met Keandre Tapp and Z.G., a juvenile, in a park. Tapp and Z.G. advised that they needed a ride to their brother's apartment to get money. These four then got in Fields' car: Fields drove, Olson sat in the front passenger seat, with Tapp and Z.G. in the back. When they arrived at their destination, Tapp and Z.G. exited the vehicle. According to Olson, three people got in the back of the car 5 to 10 minutes later. Fields then started laying out marijuana on the front center console. At that point, Olson felt a gun at the back of his head with a warning not to move. A scuffle ensued over the marijuana, and someone from the back seat shot Fields fatally in the chest. Olson did not know who fired the shot but believed it came from the back center or back right.

> Tapp testified at trial. He had never met Fields prior to the day in question, but had communicated with him through Snapchat, learned Fields would be travelling through Henderson and discussed buying marijuana from Fields. Tapp was, however, good friends with Z.G. and Pollard. He told them of his plan to buy marijuana, but that Pollard wanted to rob Fields, taking the marijuana instead. Tapp's testimony corroborated Olson's testimony about the initial meeting, driving to the other apartment complex, and Tapp and Z.G. exiting the vehicle. When Tapp and Z.G. with Pollard returned to Fields' car, Tapp and Pollard were armed; Tapp had a .22 revolver and Pollard had a silver and black .38 special.

-2-

Tapp sat behind Fields, Z.G. was in the center back, and Pollard was behind Olson. When Fields displayed the marijuana, Tapp and Pollard revealed their guns. Tapp testified that, in the fight over the marijuana, Pollard shot Fields after Fields grabbed Tapp's revolver. Immediately following the shooting, Pollard and Tapp exited the vehicle and fled. Tapp acknowledged making a plea bargain in exchange for his testimony.

Z.G. testified about his involvement. He testified that he was very close to Tapp, but only knew Pollard as an acquaintance. His testimony corroborated that of Olson and Tapp as to the initial meeting and driving to the other apartment complex, although he denied initial knowledge of the marijuana transaction/robbery. He corroborated Tapp's account of returning to Fields' car with Pollard, but that when Z.G. realized something bad was about to happen, he said he had to go to the bathroom and got out of the car. Z.G. testified that he saw Tapp and Pollard pull their guns, the scuffle, and then Pollard shoot Fields.

Following a police investigation which implicated Tapp and Pollard, Pollard was arrested. The Henderson Circuit Court grand jury indicted Pollard on two counts: a) murder and b) first degree robbery and/or complicity to first degree robbery. At trial, the jury acquitted Pollard of murder, but convicted him of complicity to first degree robbery. The trial court imposed the jury's recommended sentence of twenty-years imprisonment.

*Id*. at *1-2.

Following an unsuccessful appeal, Pollard moved the Henderson Circuit Court to vacate his conviction pursuant to RCr 11.42. The substance of his motion to that effect and how the trial court disposed of his various arguments will

-3-

be discussed in our analysis, below. In short, the trial court denied his motion without an evidentiary hearing, and Pollard now appeals.

## STANDARD OF REVIEW

In a motion brought under RCr 11.42, "[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009) (citation omitted). An RCr 11.42 motion "is limited to issues that were not and could not be raised on direct appeal." *Id.*

A successful petition for relief under RCr 11.42 for ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *accord Gall v. Commonwealth*, 702 S.W.2d 37, 39-40 (Ky. 1985). As explained by the Kentucky Supreme Court, "[a] deficient performance contains errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (internal quotation marks and citation omitted). Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

-4-

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted). As further stated in *Strickland*, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. As to the second *Strickland* prong, the defendant has the duty to "affirmatively prove prejudice." *Id*. at 693, 104 S. Ct. at 2067.

Appellate review of the denial of an RCr 11.42 motion is *de novo*. *McGorman*, 489 S.W.3d at 736. Where the trial court does not hold an evidentiary hearing on an RCr 11.42 motion, appellate review is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967) (citations omitted). An evidentiary hearing is only required "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citations omitted).

## ANALYSIS

Pollard argues that the record or applicable law does not refute each of the arguments he asserted in his RCr 11.42 motion, and that the trial court

accordingly erred in disposing of his motion without providing him an evidentiary hearing. In that regard, Pollard begins by faulting his trial counsel for failing to object when the trial court refused a request from the jury, made during its deliberations, to review a transcript or trial footage of the parties' opening and closing arguments. He argues that if the trial court had granted the request, it would have alleviated any confusion the jury may have had regarding his case.

We disagree that this qualified as a basis for relief. When the trial court denied the jury's request from the bench, it did so consistently with the law. Juries deliberate upon the evidence. Arguments of counsel are not evidence. *Chipman v. Commonwealth*, 313 S.W.3d 95, 101 (Ky. 2010) (citation omitted). And, juries must ultimately "recall the evidence themselves rather than rely solely on arguments of counsel." *Smith v. Wright*, 512 S.W.2d 943, 947 (Ky. 1974). In its subsequent order disposing of Pollard's RCr 11.42 motion, the trial court further explained:

> [E]ven assuming RCr 9.74[1] allows for the replaying of argument as well as testimony, the Court concludes that the decision whether to object to the Court's ruling was a matter of trial strategy, and counsels' decision not to object was within the range of reasonable professional assistance.

---

[1] RCr 9.74 provides: "No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant (unless the defendant is being tried in absentia) and the entire jury, and in the presence of or after reasonable notice to counsel for the parties."

We find no error in this respect; no discernable prejudice to Pollard; and no reason to part with the trial court's sound judgment.

Next, Pollard faults his counsel for failing to effectively cross-examine and impeach Keandre Tapp at trial. Pollard speculates that if his counsel had done so, enough evidence might have been elicited to support giving the jury the option of finding him guilty of the lesser offense of criminal facilitation per Kentucky Revised Statute (KRS) 506.080.

This argument lacks merit for at least two reasons. First, it is founded upon rank speculation, and speculation as to either deficiency of performance or prejudicial result is insufficient to warrant relief pursuant to RCr 11.42. *Hodge v. Commonwealth*, 116 S.W.3d 463, 470 (Ky. 2003), *overruled on other grounds by Leonard*, 279 S.W.3d at 157 (Ky. 2009). Second, Pollard did not make this argument before the trial court, and it is therefore unpreserved. Below, he merely faulted his counsel for failing to *subpoena* Tapp to secure his testimony at trial. Rejecting that argument, the trial court correctly noted that Tapp *did* testify at trial and was subject to cross-examination.

Next, Pollard speculates that his counsel confused the jury during closing arguments by failing to explain and expound upon the instruction given regarding his charge of complicity to first degree robbery. Also, he suspects the Commonwealth may have secured an unfair advantage against him because, unlike

his counsel, the Commonwealth did explain and expound upon that instruction during its closing arguments. However, *speculation* is insufficient for purposes of RCr 11.42, and nothing beyond Pollard's speculation supports that the jury was confused about how it was required to resolve his complicity charge. The Commonwealth did not misstate the law regarding Pollard's charge of complicity to first degree robbery during its closing arguments; the written jury instructions did not misstate the law either; and "[j]uries are presumed to follow the instructions of the trial court." *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006) (citations omitted).

Next, Pollard faults his counsel for failing to assert several objections to the instructions that were provided to the jury. As to the first objection, Pollard argues his counsel should have ensured that the instructions provided the jury the option of finding him guilty of the lesser offense of criminal facilitation. However, this argument is refuted by the record. As the trial court correctly observed in its dispositive order, Pollard's counsel *did* seek such an instruction, and he also raised objections to the trial court's refusal to provide it prior to the jury's deliberations and in a post-judgment motion for a new trial. Thus, his counsel effectively preserved that issue for purposes of Pollard's direct appeal.

Second, Pollard asserts that his counsel should have objected when the trial court held, during its jury instructions hearing, that no evidence justified

-8-

instructions that would have permitted the jury to consider "extreme emotional disturbance" (EED) or "self-protection" as defenses to Pollard's charges. Pollard asserts that such evidence was adduced at trial. In his brief, he elaborates upon this point, and somewhat revisits his previously addressed "facilitation" argument, as follows:

> The evidence shows that Deangelo T. Pollard, Appellant, was in a car of Devin Fields, victim, and Deandre Tapp because (Tapp) had used Appellant's address to persuade the victims to a different location such as Appellant's apartment complex by telling him Appellant was the person loaning him money to buy the marijuana to commit this crime. There was evidence (Appellant knew about the marijuana buy by loaning money but did not know about the robbery). There is evidence where [Z.G.] testified Appellant said that he did not want any part of the robbery. There was evidence Appellant was in the car with Devin Fields, victim, and Keandre Tapp, and [Z.G.] when Devin Fields, victim, and Keandre Tapp [were] fighting over a handgun while Appellant was in the back seat of Devin Fields['] car which, if the gun does go off the Appellant could have been shoot [sic] or killed so under extreme emotional disturbance Appellant acted under EED Self Protection by trying to take the gun from Tapp and Fields so, he did not get shot by the gun which they [were] fighting over. The judge took out the EED/Self Protection instructions.
>
> . . .
>
> Appellant claims that there was "evidence from which the jury could have found he acted in self-defense/or Facilitated in the crimes of Murder and First Degree Robbery because he knew about the marijuana buy and was loaning money to the principal which a crime was committed and that he tried to stop the

Robbery by taking the gun that Fields and Tapp [were] fighting over and that he was only trying to protect himself from getting shot by the gun Tapp and Devin Fields [were] fighting over while he was in the car. Appellant did not know about the Robbery and the evidence shows he did try to stop the robbery by trying to take the gun when the victim got shot in the process.

We disagree that this is a basis of RCr 11.42 relief. EED and self-protection are justifications or mitigations for actions that could otherwise qualify as criminal offenses. Whether EED or self-protection instructions might[2] have been warranted regarding Pollard's murder charge is a moot point because, as noted at the onset, Pollard was *acquitted* of that charge. Accordingly, he suffered no prejudice by not receiving those instructions.

As for what he *was* convicted of (*i.e.*, first-degree robbery), any instructions regarding EED or self-protection would have been illogical and unwarranted. Pollard is not arguing that his robbery (or complicity in the robbing) of Fields was *justified* or *mitigated* because he was suffering from a state of EED at the time, or because he was required to do so for the sake of self-preservation. Rather, Pollard's argument is that he had no hand in robbing Fields at all: In his

---

[2] Tangentially, we note that a victim's resistance to a defendant's armed robbery attempt is not the kind of reasonable explanation or excuse that would justify the defendant's loss of judgment and uncontrolled reaction required for an EED defense. *See Hodge v. Commonwealth*, 17 S.W.3d 824, 850 (Ky. 2000).

view, the evidence demonstrated "he did not know about the robbery," "did not want any part of the robbery," and that "he tried to stop the robbery[.]"

We note that Pollard's argument set forth above is also a departure from how he defended himself at trial. There, he also contended that he had no hand in robbing Fields and that he was being falsely accused, but his overarching thesis was that no physical evidence even placed him in the victim's car or otherwise at the scene of the robbery, and that the only evidence that did place him there – which consisted of testimony from Z.G. and Tapp – lacked credibility. Pursuing EED and self-protection defenses would have undermined any trial strategy focused upon demonstrating that Pollard did not participate in any robbery, or that he was not even at the scene of the crime. Thus, we find no error or abuse of discretion in the trial court's conclusion that the lack of any EED or self-protection instruction caused Pollard no prejudice, and that his counsel's decision not to pursue those instructions was within the range of reasonable professional assistance.

As a somewhat related aside, Pollard further argues that his mental state at the time of his offense should have been "evaluated," and that his counsel was deficient for failing to have such an evaluation conducted, and for failing to adduce evidence at trial in that regard. As discussed, however, his counsel's trial strategy did not focus upon Pollard's mental state, but rather upon demonstrating

-11-

that Pollard did not participate in any crime at all. As indicated, his counsel's strategy was within the realm of reasonable professional assistance, and we cannot second-guess his counsel's decision to refrain from undermining that strategy.

Pollard thirdly argues that his counsel should have raised a double-jeopardy objection. In this vein, we adopt the following part of the trial court's dispositive order, which properly summarized and correctly rejected Pollard's argument as follows:

> Pollard argues that his trial counsel erred by failing to establish a defense of double jeopardy. He asserts that, while first degree robbery is not a lesser included offense of murder, the elements and factual allegations are similar enough that they are effectively the same offense. Therefore, counsel should have objected to the jury being instructed on murder and first degree robbery as separate crimes, because for him to be convicted of both would have violated double jeopardy. Pollard further argues once he was acquitted of murder, he must necessarily have been acquitted of first degree robbery as well. *Cf.* KRS 505.040.
>
> However, review of the law indicates that this is not the case. Bennett v. Commonwealth, Ky. 978 S.W.2d 322 (1998). Kentucky law uses the Blockburger test[FN] and KRS 505.020 in determining when a single course of conduct may establish more than one offense. Id., 327.
>
> [FN] Blockburger v. United States, 284 U.S. 299 (1932).
>
> That test is whether the conduct violates two distinct statutes and, if so, whether each statute requires proof of an element the other does not. Id.

-12-

Here, the offenses of murder and first degree robbery each have an element the other does not. Id. The death of the victim is an element necessary to convict of murder, but is not required to convict of first degree robbery. KRS 507.020(1). Theft or attempted theft is an element necessary to convict of first degree robbery, but is not required to convict of murder. KRS 515.020(1).

There was no implication of double jeopardy in the grand jury's indicting the defendant or the Court's instructing the jury on both murder and first degree robbery. Defense counsel made no error in failing to object to it. Likewise, acquittal on the count of murder did not necessarily lead to acquittal on the count of robbery. Counsel made no error outside the range of reasonable professional assistance, and there is no error which prejudiced the defense or made the result of the trial unreliable.

The fourth objection Pollard faults his counsel for not making, relative to the jury instructions, relates to the "complicity to first degree robbery" instruction provided to the jury. That instruction was as follows:

INSTRUCTION NO. 4

If you do not find the defendant guilty under Instruction No. 3, you will find him guilty of Complicity to First Degree Robbery under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about November 10, 2017, the defendant, in complicity with Keandre Tapp, stole or attempted to steal marijuana from Devin Fields;

B. That in the course of so doing and with intent to accomplish the theft, the defendant, in complicity with

-13-

Keandre Tapp, used or threatened the immediate use of physical force upon Devin Fields;

AND

C. That in the course of doing so and with intent to accomplish the theft, *either the defendant or Keandre Tapp caused physical injury to Devin Fields by shooting him with a handgun*.

(Emphasis added.)

Pollard argues this instruction subjected him to a non-unanimous verdict because its above-emphasized wording did not require the jury to determine whether he was the principal robber or an accomplice.[3]

We disagree. In Kentucky, "a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof – violates the requirement of a unanimous verdict." *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013). However, such a situation is not to be confused with one instance of a criminal offense which may have been committed directly, through being the actor who physically did it, or indirectly as an accomplice. As explained in *King v. Commonwealth*, 554 S.W.3d 343, 352 (Ky. 2018):

> This court recognizes and has consistently maintained that the jurors may reach a unanimous verdict even though they may not all agree upon the means or

---

[3] In Henderson Circuit Court case no. 18-CR-00073, Keandre Tapp was convicted of facilitation to first-degree assault and conspiracy to first-degree robbery, pursuant to a guilty plea.

-14-

method by which a defendant has committed the criminal act. *Conrad v. Commonwealth*, 534 S.W.3d 779, 784 (Ky. 2017) (quoting *Miller v. Commonwealth*, 77 S.W.3d 566, 574 (Ky. 2002)) (A "conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory."). Nor is the jury required to agree upon the defendant's mental state in cases where alternative mental states authorize conviction for the same criminal act. *Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky. 1978) ("We hold that a verdict cannot be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense."). Neither *Harp* [*v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008)], *Johnson*, nor their progeny changes that.

However, we have also held consistently with virtually every other American jurisdiction to address the matter, that juror unanimity means that jurors must agree upon the specific instance of criminal behavior committed by the defendant but they need not agree upon his means or method of committing the act or causing the prohibited result.

The fact that either Pollard or Tapp may have been the principal robber does not mean that they are not each guilty of robbery, whether as a principal or as an accomplice pursuant to KRS 502.020, for this single act. Similarly, where, as here, the evidence indicated that either Pollard or his co-defendant could have been the principal robber or an accomplice, and "it was impossible to determine that either appellant was only a principal or only an accomplice[,]" "[a] verdict cannot be attacked as being non-unanimous where both

-15-

theories are supported by sufficient evidence." *Halvorsen v. Commonwealth*, 730 S.W.2d 921, 925 (Ky. 1986) (citation omitted). Accordingly, there was no unanimity problem, and the trial court correctly rejected this argument as well.

The remainder of Pollard's arguments concern various rulings the trial court made during his trial, which he claims were erroneous. We will not discuss these arguments beyond stating that they do not involve ineffective assistance of his counsel, and that Pollard could and should have made them in his direct appeal.

## CONCLUSION

In sum, the record and applicable law refuted Pollard's allegations and arguments set forth in his RCr 11.42 motion. Accordingly, the Henderson Circuit Court properly denied his motion, and the was no need for an evidentiary hearing or the appointment of counsel. We therefore AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Deangelo T. Pollard, *pro se*
Wheelwright, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky