RENDERED:  DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0195-MR

MOSES KUHBANDER                                                              APPELLANT

v.
APPEAL FROM JESSAMINE CIRCUIT COURT
HONORABLE C. HUNTER DAUGHERTY, JUDGE
ACTION NO. 13-CR-00132

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  Moses Kuhbander ("Kuhbander") appeals *pro se* from the Jessamine Circuit Court's judgment denying his Kentucky Rule of Criminal Procedure ("RCr") 11.42 motion.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2014, a jury convicted Kuhbander of first-degree sexual abuse and being a persistent felony offender in the second degree.  The Jessamine Circuit Court sentenced Kuhbander to the recommended twenty (20) years'

incarceration. On direct appeal, the Kentucky Supreme Court summarized the

facts surrounding Kuhbander's case as follows:

> In 2013, Kuhbander lived in Dayton, Ohio, with his girlfriend Virginia and her two children Sarah and Allison.[1] In July of that year, Kuhbander, Virginia, Allison, Sarah, and Sarah's friend, Beverly, took a weekend trip to Nicholasville, Kentucky. On the trip, everyone but Allison stayed with Virginia's friend, Donna Smith. During the weekend trip, Allison stayed with her father, Jeffery.

> During the evening of July 21, Sarah was outside playing with Beverly when she developed an earache and decided to go to bed. When Sarah entered the bedroom her family was staying in, Kuhbander and Virginia were already in bed watching a movie. Sarah laid down on the bed, resting her ear on Kuhbander's arm, and fell asleep.

> Later that evening, Sarah was awakened by Kuhbander's hand reaching inside her shorts, beneath her underwear, and massaging her buttocks. In an effort to get Kuhbander to stop touching her, Sarah rolled over in bed. However, Kuhbander was undeterred and reached his hand inside Sarah's shorts, beneath her underwear and fondled her vagina. During the course of the assault, Virginia got out of bed and went to the bathroom. In her absence, Kuhbander asked Sarah if she was enjoying what he was doing. Sarah replied that she wanted to sleep. Subsequently, Sarah put on her pajama pants and laid down on the floor of the bedroom to go back to sleep.

> The next morning, Kuhbander asked Sarah if she remembered anything from the previous evening. Sarah lied and informed him that she did not. Later that

---

[1] The names of all minors in this Opinion have been replaced with pseudonyms to preserve their privacy.

morning, as the family was preparing to leave Donna's house, Sarah told Beverly about the assault. Subsequently, Sarah also told Donna that Kuhbander had tried to put his hands down her pants. After learning about the abuse, Donna insisted that Sarah tell Virginia about what had happened.

Shortly thereafter, Sarah informed her mother of the assault, but Virginia did not take any action. Rather, despite Donna's request that Virginia leave Sarah with her, Virginia elected not to change the family's plan to leave that morning to return to Dayton.[2]

Several hours after the group left, Donna called Jeffery's girlfriend to inform her about what had happened, and she in turn relayed the information to Jeffery. After learning of the abuse, Jeffery concocted a ruse with the assistance of the Jessamine County Sheriff's Office (JCSO). Jeffery had a friend contact Virginia to tell her that he and Allison had been injured in a car accident and were in the hospital. In the meantime, Jeffery and law enforcement waited at the hospital for the arrival of Virginia and Kuhbander.

However, the ruse was discovered when one of Virginia's friends went to the hospital and learned that there had been no accident. That friend then informed Virginia, who continued their trip back to Dayton. Subsequently, Jeffery contacted Virginia to discuss Sarah's claim of sexual abuse. After the pair began to argue, Kuhbander took the phone to speak to Jeffery. Kuhbander told Jeffery that accusing him was a mistake and threatened to kill him.

In the meantime, while law enforcement had been unsuccessful in luring Kuhbander back to Nicholasville, they continued to pursue the case. Specifically,

---

[2] While the trip to Dayton was not delayed, the group left in such a hurry that they did not retrieve Allison from Jeffery's home as expected.

Detective Brian Carpenter of the JCSO requested that the Dayton Police Department conduct a welfare check on Sarah. The Dayton police agreed and dispatched two officers to Virginia and Kuhbander's residence.

When the Dayton police arrived at the residence, they informed Kuhbander and Virginia that they were there to perform a welfare check on Sarah. Virginia and Kuhbander informed the police that Sarah was not there, but at a relative's home in Kettering, a suburb of Dayton. The officers asked for the relative's address, at which point Kuhbander left the room to make a telephone call. After completing his call, Kuhbander informed the police that they could not know where Sarah was without a lawyer and a court order.

In response, the police informed Kuhbander and Virginia that by failing to provide them with the address, they could be arrested for obstructing official business. Kuhbander and Virginia remained steadfast in their refusal to provide the address. Subsequently, the police arrested the couple for obstructing official business, although the charges were dismissed shortly thereafter. Ultimately, the police were able to locate Sarah and she participated in a forensic interview. That interview was provided by the Dayton police to Detective Carpenter, who presented the case to the grand jury. The Jessamine County Grand Jury returned an indictment against Kuhbander for first-degree sexual abuse and for being a second-degree persistent felony offender.[3]

. . . .

The jury found Kuhbander guilty of first-degree sexual abuse and for being a first-degree persistent felony offender and recommended a penalty of twenty years'

---

[3] Prior to trial the charge of second-degree persistent felony offender was amended to first-degree persistent felony offender.

imprisonment. The trial court sentenced Kuhbander in conformance with the jury's recommendation.

*Kuhbander v. Commonwealth*, No. 2015-SC-000149-MR, 2017 WL 1538524, at *1-2 (Ky. Apr. 27, 2017).[4]

On direct appeal, the Kentucky Supreme Court affirmed Kuhbander's convictions but found palpable error in the sentencing phase of Kuhbander's trial. *Id.* Thus, the Court reversed his sentence and remanded for a new penalty phase proceeding. *Id.*

Following a second penalty-phase jury trial, the circuit court again sentenced Kuhbander to twenty (20) years' imprisonment. Kuhbander appealed that sentence to the Kentucky Supreme Court, *Kuhbander v. Commonwealth*, No. 2018-SC-000131-MR, 2019 WL 1172990 (Ky. Feb. 14, 2019). The Court affirmed.

Kuhbander subsequently filed a *pro se* motion to vacate his sentence under RCr 11.42. Kuhbander was appointed counsel, who filed a supplement to Kuhbander's motion. Kuhbander raised several claims to the circuit court claiming his counsel was ineffective, including trial counsel's (1) failure to object to certain statements made by the prosecutor, (2) failure to raise an intoxication defense, (3) failure to request a continuance after receiving jail phone calls from the prosecutor

---

[4] We cite this case pursuant to Kentucky Rule of Appellate Procedure ("RAP") 41(A).

shortly before trial, (4) failure to have Kuhbander evaluated for criminal responsibility, (5) refusal to impeach the victim, (6) refusal to call the victim's mother as a witness, and (7) alleged withholding of evidence from Kuhbander.[5]

The Commonwealth filed a response objecting to the motion. The circuit court denied the motion without a hearing. Kuhbander now appeals the circuit court's denial of his motion *pro se*. Kuhbander also requests that we remand this case to the circuit court to hold an evidentiary hearing regarding his claims of ineffective assistance of counsel.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. *Strickland* Factors and Our Standard of Review

In a motion brought under RCr 11.42, "[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006) (citations omitted), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009). "RCr 11.42 motions are limited to the issues that were not and could not be raised on direct appeal." *Id*. at 568 (citation omitted).

---

[5] We note that Kuhbander only raises on appeal some of the original arguments in his RCr 11.42 motions. Therefore, we will only discuss those raised in his appellate brief.

-6-

Specifically, a successful petition for relief under RCr 11.42 for ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *accord Gall v. Commonwealth*, 702 S.W.2d 37, 39-40 (Ky. 1985). In describing these two factors, the Kentucky Supreme Court has stated that:

> [a] "deficient performance" contains errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the appellant must show that counsel's deficient performance prejudiced his defense at trial. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. An appellant must satisfy both elements of the *Strickland* test in order to merit relief.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (internal quotation marks and citations omitted).

Regarding the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Moreover, Kuhbander's trial counsel has "a strong presumption" in his or her favor that the conduct fell "within the wide range of reasonable professional assistance." *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 158-59 (Ky. 2009).

As to the second prong, to establish actual prejudice, the appellant must show a "reasonable probability" of a different outcome for the proceeding. *Bowling v. Commonwealth*, 981 S.W.2d 545, 551 (Ky. 1998) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). Appellate review of counsel's performance under *Strickland* is *de novo*. *McGorman*, 489 S.W.3d at 736.

Where the trial court does not hold an evidentiary hearing on an RCr 11.42 motion, appellate review is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967) (citations omitted). Kentucky law requires an evidentiary hearing only "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citations omitted).

### 2. **Discussion**

Kuhbander first claims that his trial counsel was ineffective for not raising an intoxication defense. Upon review, however, we agree with the circuit court's disposition of this matter, in which it stated the following:

> This question does not involve a material issue of fact that cannot be determined from the record.
>
> Defendant's claim fails because the intoxication defense is not a lawful defense to first[-]degree sexual abuse. *Malone v. Commonwealth*, 636 S.W.2d 647 ([Ky.] 1982); *Isaacs v. Commonwealth*, 553 S.W.2d 843 ([Ky.] 1977); *Henson* [*v.*] *Commonwealth*, [No. 2020-SC-0343-MR, 2021 WL 5984690 [Ky. Dec. 16, 2021].[6] It is not ineffective assistance to either fail or refuse to present a futile or unlawful defense.

Indeed, as stated by the Kentucky Supreme Court in *Malone*, "the act [of sexual abuse] completed the offense without regard to the mental state with which it was done." 636 S.W.2d at 647. Indeed, "we have consistently held that in cases where the doing of the act constitutes a crime regardless of the intention with which the act [is] done, the defendant is not entitled to an instruction on lack of mental capacity to form an intent to commit the crime due to intoxication." *Isaacs*, 553 S.W.2d at 845 (citations omitted). Thus, as Kuhbander has failed to show any error, we affirm. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Kuhbander next argues that his trial counsel was ineffective for failing to object to certain comments made by the prosecutor during the guilt and penalty phases of the trial. Even if a prosecutor's statement was improper, "reversal is only required if the misconduct was 'flagrant' and, as such, rendered the trial fundamentally unfair." *Murphy v. Commonwealth*, 509 S.W.3d 34, 54 (Ky. 2017).

---

[6] This case is cited pursuant to RAP 41(A).

In determining whether an improper statement amounts to flagrant misconduct, one factor to consider is "the strength of the evidence against the accused." *Id*. (citations omitted).

Again, we agree with the circuit court's analysis regarding this alleged error:

> This question does not involve a material issue of fact that cannot be determined from the record.
>
> . . . .
>
> Regardless of the standard applied, the evidence of Defendant's guilt in this case was overwhelming. Not only was the victim's testimony clear and unequivocal, it was supported by the contemporaneous facts and circumstances immediately following the assault and by the incriminating statements made by the Defendant himself in the recorded jail phone calls.
>
> There is no reasonable probability that but for the defense counsel's failure to object to the Commonwealth's improper comments during closing and its improper cross-examination the result of the proceedings would have been different.

Therefore, even if this Court found Kuhbander's counsel's failure to object to be objectively unreasonable as opposed to trial strategy, Kuhbander's claim must still be denied as he cannot show prejudice. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

Kuhbander next argues that his trial counsel was ineffective for failing to impeach the victim with alleged inconsistencies between her trial testimony and

the forensic interview. We note that Kuhbander provides no facts or information to support his argument in either his appellate brief or his RCr 11.42 motion. Additionally, we again agree with the circuit court's analysis of this issue:

> This question does not involve a material issue of fact that cannot be determined from the record.
>
> Part of Defendant's first appeal addressed the portion of the Commonwealth's closing argument which was intended to explain the inconsistencies between the child's forensic interview and her trial testimony, which had been brought to the jury's attention by defense counsel. Not only is Defendant's contention contradicted by the record, it was addressed and discounted on appeal.
>
> Further, there is no reasonable probability that but for defense counsel's failure to further emphasize the inconsistencies between her testimony and the forensic interview the result of the proceedings would have been different.

This claim fails.

Kuhbander next claims, based on the supplemental motion filed by DPA,[7] that his counsel was ineffective for failing to request a continuance of the trial to review jail phone calls with him that counsel received one and a half weeks before trial. Kuhbander again provides no citations to authority or facts in his argument. Additionally, Kuhbander's only argument on appeal is that the calls were irrelevant and should not have been admitted. However, "[an] RCr 11.42

---

[7] Department of Public Advocacy.

motion is limited to the issues that were not and could not be raised on direct appeal. An issue raised and rejected on direct appeal may not be relitigated in these proceedings by simply claiming that it amounts to ineffective assistance of counsel." *Prescott v. Commonwealth*, 572 S.W.3d 913, 922 (Ky. App. 2019) (internal quotation marks and citations omitted).

Moreover, as the circuit court pointed out, "the failure of counsel, even if appointed on the day of trial, to request a continuance at the defendant's insist[e]nce, would not of itself support a motion to set aside the conviction on the ground of ineffective assistance of counsel." *Hargrove v. Commonwealth*, 396 S.W.2d 75, 76 (Ky. 1965) (quoting *Jones v. Commonwealth*, 388 S.W.2d 601, 603 (Ky. 1965)). Kuhbander has failed to show his counsel was objectively unreasonable in not requesting a continuance. He has also failed to show any prejudice. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Thus, we affirm the circuit court's determination as to this issue.

Finally, Kuhbander argues that he was denied effective assistance of trial counsel due to the cumulative effects of his counsel's errors. However, the Kentucky Supreme Court has rejected cumulative-error arguments when there was no merit to individual claims of ineffective assistance of counsel. *See McQueen v. Commonwealth*, 721 S.W.2d 694, 701 (Ky. 1986) ("In view of the fact that the

-12-

individual allegations have no merit, they can have no cumulative value.").  Thus, we affirm.

## **<u>CONCLUSION</u>**

For the foregoing reasons, we affirm the Jessamine Circuit Court's order denying Kuhbander's RCr 11.42 motion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Moses Kuhbander, *pros Se*
Wheelwright, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky