**Eugene Williams GALL, Jr.,
Respondent/Appellant,**

v.

**COMMONWEALTH of Kentucky,
Movant/Appellee.**

Supreme Court of Kentucky.

Nov. 21, 1985.

Rehearing Denied Feb. 6, 1986.

38

Erwin W. Lewis, Edward C. Monahan, Assistant Public Advocates, Frankfort, for respondent/appellant.

Steven L. Beshear, Atty. Gen., K. Gail Leeco, Asst. Atty. Gen., Frankfort, for movant/appellee.

AKER, Justice.

Eugene W. Gall was convicted of the murder of 12-year-old Lisa Jansen and sentenced to death pursuant to the verdict of a jury under a two-stage trial procedure prescribed by KRS 532.025. This court affirmed his conviction and sentence on Sep-

tember 2, 1980, and modified its opinion on October 14, 1980. *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980), *cert. denied*, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (March 9, 1981). On August 26, 1981, Gall filed an RCr 11.42 motion and request for an evidentiary hearing in the Boone Circuit Court. The court allowed an evidentiary hearing which began on February 23, 1983, and ended three days later whereupon Gall's RCr 11.42 motion was overruled. This court granted transfer of Gall's appeal from the circuit order. We affirm.

■ Gall first contends that the two public defenders who represented him, Wilbur Zevely and John Berger, rendered such ineffective assistance to him so as to deprive him of his right to counsel under the Sixth and Fourteenth Amendments of the Constitution of the United States, and Section Eleven rights under the Constitution of Kentucky. This court is bound by the principles established by the Supreme Court of the United States in the case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in the context of analyzing ineffective assistance of counsel claims under the Sixth and Fourteenth Amendments.

In *Strickland*, also a death penalty case, the court established a two-prong test for analyzing claims that a defendant has been deprived of a fair trial due to ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the

result unreliable. 466 U.S. ——, 104 S.Ct. 2064, 80 L.Ed.2d at 693.

Applying this standard we now turn to Gall's contention that Zevely and Berger rendered such ineffective assistance so as to deprive him of his constitutional right to counsel.

■ Gall first contends that Zevely and Berger, in deciding to introduce a limited amount of insanity evidence, did not present his insanity defense in a reasonable manner. Specifically, Gall cites counsels' failure to produce records and testimony of his history of mental illness, as inadequate investigation of his insanity defense. Counsel for Gall explained that in order to avoid a "battle of experts" with the Commonwealth on the issue of insanity and the defendant's mental state, they decided to produce only one live expert witness, Dr. Robert Noelker, on the issue of insanity.

Dr. Noelker saw Gall twenty-one or twenty-two times prior to trial. Dr. Noelker's examinations included a diagnostic clinical session, the taking of a history, and the giving of a series of structured and objective tests, some data from which was forwarded to California for blind analysis. Dr. Noelker also had reports available from psychiatrists who had examined and declared Gall incompetent to stand trial on numerous charges of sexual assaults and robberies in 1970. In Dr. Noelker's opinion the records were sufficient and there was no need to visit the psychiatrists who declared him incompetent. Other records which were not obtained for trial, but which were shown to Dr. Noelker later, would not have changed or enhanced his opinion that Gall suffered from chronic paranoid schizophrenia, severe sexual disturbance associated with extreme dangerousness to members of the opposite sex.

Gall cites the case of *David v. State of Alabama*, 596 F.2d 1214 (5th Cir.1979), in support of his contention that counsels' strategy amounted to "brinksmanship with the defendant's only possible defense", *David* at 1221. In *David*, counsels' only witness on the issue of defendant's insanity was the sheriff who arrested defendant and who made the remarkably profound scientific observation that defendant was "quite-fairly strange." *Id* at 1216. We find counsels' "legwork" in this case far in excess of that in the *David* case cited by Gall. Likewise, the case of *Marzullo v. State of Maryland*, 561 F.2d 540 (4th Cir. 1977), says nothing in support of Gall's contention that counsels' strategy was deficient.

We find, as did the circuit court, that the decision of Gall's trial attorneys to introduce a limited amount of insanity evidence was a reasonable trial tactic, considering counsels' experience that bringing on a barrage of expert witnesses usually resulted in the defendant losing, and does not amount to ineffective assistance under the first prong of the *Strickland* test. As for the second prong of the *Strickland* test, which requires that the allegedly deficient performance by counsel actually prejudice the defense, we agree with the circuit court in its conclusion that Gall's decision to act as his own attorney, combined with his lawyer-like dress and lawyer-like cross-examination questions, gave the appearance to the jury of being in control of himself, and consequently destroyed his insanity defense. In our opinion Gall has failed to prove either prong of the *Strickland* test, much less both prongs as that test requires. 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed. at 693.

■ Gall next contends that his attorneys did not present an effective change of venue petition. On September 6, 1978, counsel petitioned for a change of venue. Attached to the petition were thirteen affidavits of "respectable citizens, many of whom were well-known personally to the Court." The affidavits stated that the affiants were familiar with public opinion in Boone County and believed that there was no conceivable way Gall could have a fair trial in Boone County. Also filed with the petition were eighty-three pages of newspaper articles demonstrating extensive media coverage of the crime and Gall. Although Counselor Zevely felt that the petition adequately presented the venue question, it

had been his experience with the trial court that venue would not be changed unless and until voir dire demonstrated that an impartial jury could not be impaneled.

This court, in *Gall v. Commonwealth,* Ky., 607 S.W.2d 97, 101–104 (1980), in an extensive analysis of this issue, determined that Gall had "a panel of impartial, 'indifferent' jurors." *Id.* at 102, citing *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). "None of the fourteen jurors chosen to hear Gall's case thought he was guilty when preliminarily questioned." 607 S.W.2d at 102. Gall failed to show "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." *Id.* citing *Irvin.* We concluded:

> Finally, in terms of this particular proceeding, the very fact that in a capital case the court was able to complete a 14-member jury (including the alternates) from only 51 venireman utterly refutes the existence of such community prejudice as would prevent the selection of a proper jury. 607 S.W.2d at 102.

Gall cites *Harris v. Housewright,* 697 F.2d 202 (8th Cir.1982), where two young attorneys appointed to represent a defendant in a capital murder case, one admitted to the bar less than two weeks before appointment, were held to have inadequately represented their client. Gall contends that *Harris* supports his contention that the mere filing of a newspaper article along with affidavits of residents of the county in which the case is being prosecuted, to the effect that a fair trial cannot be had, is ineffective assistance of counsel. Gall fails to mention some seven odd grievous errors made by the attorneys in that case, including failure to challenge a juror whose brother-in-law was a member of the sheriff's department who had "worked the case." *Id.* at 207. Another juror was the daughter of the bailiff, who sat at Harris' trial, *Id.* Although the failure to challenge these jurors was prejudicial in itself, the court nevertheless held: "No single error made by the petitioner's appointed counsel is of constitutional dimension, yet, when viewed cumulatively, the multiple errors revealed in the record, as discussed below, demonstrate that counsel's total performance was below the level of professional skill customary for competent counsel similarly situated." (Citations omitted.) *Id.* 206.

We are of the opinion that Gall's reliance on *Harris* is misplaced, especially in light of the fact that, unlike *Harris,* Gall had an impartial jury. Although we see no deficiency in Attorney Zevely's judgment to not expend any further time and effort to change venue, in light of his experience with the trial court's practice to attempt to first seat an impartial jury, we find that there was no prejudice to Gall under the *Strickland* standard since Gall had an impartial jury. *See Gall v. Commonwealth,* Ky., 607 S.W.2d 97, 101–104.

■ Gall's third contention is that counsel was ineffective in their preparation of the penalty phase of the trial. An abundance of evidence was introduced at the penalty phase. The expert testimony that Gall was insane was equally relevant on the issue of whether Gall suffered from a mental disease or defect which could be considered a mitigating circumstance in determining the penalty. We have already determined that the presentation of Gall's insanity defense was reasonable at the trial stage and therefore, equally effective at the penalty phase.

Additionally, counsel interviewed Gall's mother, father, sisters, minister, ex-wife, fiance, his Middletown attorney, Harry Bolser, a reporter who had witnessed executions at Eddyville Penitentiary, and Dr. Richardson, a correctional psychologist.

Gall contends that counsel's failure to call every witness from a list he provided prejudiced him at the penalty phase. Counsel or their office personnel contacted some of the witnesses, including one or two of his former employers and Mr. and Mrs. Whitehouse; however, the witnesses were not helpful; the things they had to say were not good.

At the penalty phase, counsel introduced testimony from Gall's mother, father, ex-wife and Dr. Noelker, who testified as to Gall's mental state at the trial stage. Also, affidavits were read from Harry Bolser and Dr. Richardson. We feel that this presentation was not only reasonable but that Gall has failed to show that counsels' decision to present only these witnesses prejudiced him at the penalty phase.

■ Gall's fourth contention is that counsel failed to effectively challenge scientific testimony of a state-employed serologist who testified concerning blood type, and a state-employed ballistics expert who identified a bullet and gun used by Gall while fleeing from his crime. Gall alleges that counsel's failure to have this physical evidence independently tested was negligent. Counselor Zevely, who had a degree and seven years' work-experience in chemistry, personally spoke to the chemist serologist and to the Kentucky State Police Laboratory. The chemist was cooperative and the ballistics expert also satisfied Zevely that he had tested the evidence accurately.

Based on his own experience, educational background and personal investigation, Zevely became convinced that any expert witness he would get would reach the same conclusions as those from the Kentucky State Police Laboratory. We find Zevely's strategy reasonable and non-prejudicial to Gall since scientific testimony aimed at the issue of identification was clearly established by other evidence. For example, the state trooper shot by Gall testified that Gall was his assailant. Additionally, Zevely chose to minimize the probative value of the physical evidence through effective cross-examination of the Commonwealth's expert witnesses.

■ Gall's fifth contention is that counsel chose not to challenge the compositions of the grand and petit juries. He argues that counsel should have conducted a survey to determine the number of "young people" who lived in Boone County in 1978 and compared that figure with the number of "young people" who have served as jurors and jury commissioners in Boone County.

Counsel decided that the massive amount of time necessary to do a jury composition study on "young people" would be too unproductive and time-consuming. We agree. We also find no prejudice since the jury commissioner testified that jurors were chosen from the voter registration lists and tax rolls by numerical interval with no exclusions for any reason except disability. Gall fails to prove that any other method makes the result in his trial unreliable under the *Strickland* standard.

■ Gall's sixth contention is that counsel was ineffective in failing to file a discovery motion. We see no prejudice in this regard since the practice of the Commonwealth's Attorney in Boone County is to provide an "open file" discovery. Counsel for Gall was given the entire trial manual which the Commonwealth used to try the case. No evidence was introduced at trial by the Commonwealth which was not in the trial manual. Since there was no prejudice to Gall, this argument is without merit under *Strickland*.

■ Gall next contends that counsel was ineffective since a lack of sufficient pre-trial contacts, in effect, forced him to represent himself and thereby destroy his insanity defense. Counselor Zevely testified that he saw Gall a number of times in Grant County Jail and in Boone County Jail. Counselor Berger testified that he "lived a lot of time behind doors with Eugene." Gall had a complete copy of the Commonwealth's trial manual. He attended the many hearings and was sent a letter on August 30, 1978, describing counsels' trial strategy. We feel that counsel maintained a viable attorney-client relationship with Gall.

We have no evidence, beyond the bare allegation, that the "insufficient" contacts with counsel prior to trial caused Gall to fire his attorneys during trial and represent himself. In Dr. Noelker's opinion, Gall's self-representation was attributable only to his deteriorating mental state. Dr.

Noelker and Counselor Zevely both testified to counsels' efforts to dissuade Gall from his self-destructive self-representation. In our opinion, Gall's decision to represent himself was independent and not the result of ineffective assistance of counsel.

■ Gall's final argument in his ineffective assistance of counsel claim is that counsel tendered a murder instruction which did not include with the "extreme emotional disturbance" phrase, the additional statutory language, "the reasonableness of which is to be determined from the standpoint of a person in the defendant's circumstances as the defendant believed them to be." In *Gall v. Commonwealth*, Ky. 607 S.W.2d 97 (1980), we found the omission proper since, unlike the case where emotional disturbance has been precipitated by some event or circumstance that the defendant believed to exist, there was no evidence that Gall was motivated by any "belief" on his part with regard to the circumstances that induced the alleged emotional disturbance. *Id* at 109. Since there was no prejudice to Gall, and the instruction did provide a vehicle by which the jury could have found Gall guilty of a lesser offense than murder, if so disposed, the ineffective assistance of counsel contention is without merit under the *Strickland* test.

We conclude that, pursuant to the standard established by the United States Supreme Court in *Strickland v. Washington*, counsels' allegedly deficient conduct in this case was not so serious as to have "undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d 674 at 693. Considering the totality of evidence in this case we cannot say that but for counsel's "unprofessional errors," the result of the proceeding would have been different. *Id.*, 466 U.S. at ——, 104 S.Ct. at 2068–69, 80 L.Ed.2d at 698. We are of the opinion that counsel for Gall presented a sound strategic defense in his behalf. The abundance of detrimental evidence, when combined with Gall's indepen-

dent decision to represent himself, make it even more unlikely that the result would have been favorable to Gall had counsel proceeded any differently. We have no doubt whatsoever that Gall had a fair trial under the Sixth Amendment.

■ Gall's second argument is that his transfer from Kentucky to Ohio to stand trial for rape and abduction charges there, was violative of the Uniform Criminal Extradition Act, KRS 440.150–440.420, and the Interstate Agreement on Detainers, KRS 440.450, and therefore, Kentucky has lost jurisdiction over him to carry out his execution. Gall cites the United States Supreme Court decision of *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) in support of this argument.

In *Cuyler*, the court determined that a prisoner had stated a claim for relief under 42 USCS § 1983 to enjoin his transfer from Pennsylvania to New Jersey to stand trial there before first receiving a pre-transfer hearing under the Uniform Criminal Extradition Act. The court also found that the prisoner was entitled to petition the Governor of Pennsylvania to disapprove New Jersey's request for his custody.

We can only agree that *Gall* was denied his right to petition the Governor of Kentucky to disapprove Ohio's request for temporary custody under the Interstate Agreement on Detainers (I.A.D.), and that he was not allowed the opportunity to file a writ of habeas corpus under the Uniform Criminal Extradition Act as incorporated into the I.A.D. by the Supreme Court in *Cuyler*.

However, we are not convinced that the holding in *Cuyler*, a § 1983 action to enjoin a prisoner's transfer, holds that a sending state loses jurisdiction over a prisoner to carry out his punishment when returned by the receiving state. Article V(7) of the I.A.D. provides:

> For all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending state ...

Gall intertwines the *Cuyler* decision with our decisions in *Balsley v. Commonwealth*, Ky., 428 S.W.2d 614 (1968), *Thomas v. Schumaker*, Ky., 360 S.W.2d 215 (1962), *Davis v. Harris*, Ky., 355 S.W.2d 147 (1962), and *Jones v. Rayborn*, Ky., 346 S.W.2d 743 (1961), for a second assault on the jurisdiction of this state to carry out his execution. However, these cases were decided prior to Kentucky's enactment of the IAD and stand for the proposition that unauthorized persons may not order or permit transfer of a Kentucky prisoner to another jurisdiction. Such is not the case here. The warden who transferred Gall was authorized to do so under the I.A.D., Article IV(1). Additionally, in the *Balsley, Thomas, Davis* and *Jones* cases, there was no stipulation for return of the prisoner or parolee. Return of the prisoner to the sending state is automatic under the I.A.D., Article V(5).

These cases are also distinguishable in that the prisoners had all been surrendered to federal authorities before they had completed serving sentences for Kentucky convictions, and had served sentences on federal convictions before Kentucky attempted to re-incarcerate them to complete their Kentucky sentences. Such is not the case here. Gall was transferred to Ohio to stand trial for charges there. He never served a sentence in that state but was immediately returned to this state as the I.A.D. required. Article V(5). The underlying purpose of limiting transfer in these cases was to prevent the interruption of the rehabilitative function of the penal system. The jury returned a death sentence for Gall, and therefore, the rationale underlying these cases is inapplicable to him.

As such, we conclude that these cases have no application to Gall and that Kentucky has jurisdiction to carry out his execution. I.A.D. Article V(7).

█ Gall next argues that the jurors did not properly consider his mental illness in the penalty phase. He bases this allegation on the testimony of one juror and hearsay testimony of another juror. The argument is without merit since the evidence is incompetent under RCr 10.04 which states:

A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot.

Likewise, Gall's argument that the jurors improperly considered parole is without merit for the same reason. *Necamp v. Commonwealth*, Ky., 225 S.W.2d 109 (1949) is distinguishable in that the defendant in that case filed an affidavit which revealed that a juror consulted with a priest during a recess and upon returning to deliberations about imposing the death penalty, consoled another juror, informing her that the priest told her that imposing the death penalty would not be sinful. *Necamp* does not sanction examination of jurors to search for inconsistencies in their deliberations. *Necamp* only addresses the issue of jurors who consult with others and carry their advice into the jury room. *Id.* at 112. Gall offers no allegations or evidentiary support of that proposition in this case. Moreover, the juror testimony presented by Gall does not convince us that the jurors improperly considered all of the evidence at the penalty phase.

█ Gall's next contention is that the court improperly admitted evidence in the RCr 11.42 hearing that he had taken a polygraph examination. In the past, it has been held that admission of such evidence in a proceeding deciding the guilt or innocence of the accused is error. *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984). The introduction of polygraph evidence in this case was in an RCr 11.42 proceeding to determine effectiveness of counsel. The purpose of its admission was relevant to prove that Counselor Zevely had pursued an extensive investigation and to further prove the reasonableness of his strategy decisions based on that investigation. Since it was introduced for this purpose, it is not hearsay, *Manz v. Commonwealth*, Ky., 257 S.W.2d 581 (1953), and does not violate the attorney/client privilege since by attacking his attorney's competence, Gall waived any privilege resulting from

the relationship. See *Dodd v. Williams*, 560 F.Supp. 372 (N.D.Ga.1983).

■ Gall's next argument is that the court abused its discretion in overruling Gall's motion for a continuance in the RCr 11.42 hearing to secure out-of-state witnesses and evidence which he alleges were material in proving his ineffective assistance of counsel claim. He relies on KRS 421.250 which allows a defendant compulsory process for material witnesses in other states to testify in criminal prosecutions in this state. The argument is misplaced since the alleged error was in an RCr 11.42 hearing to resolve Gall's ineffectiveness of counsel claim, not a prosecution. We are of the opinion that the trial court did not abuse its discretion in denying Gall's motion. *Fannin v. Commonwealth*, Ky., 331 S.W.2d 726 (1960).

■ Gall's seventh argument is that the prosecutor, in his questions and in his closing, made inferences about the testimony of a serologist which far surpassed those which could be legitimately based upon the evidence. Since the testimony of the serologist was introduced to identify Gall as the rapist/murderer of Lisa Jansen, any alleged misuse of that testimonial evidence by the Commonwealth is without prejudice to Gall since identity was independently proved when experts had determined from the steel jacket of the bullet fired into Lisa Jansen's back that the shot had been fired from the .357 caliber revolver found in the automobile Gall was driving at the time of his arrest.

Gall's eighth argument is that, in violation of the Eighth and Fourteenth Amendments of the United States Constitution, he was sentenced to die by a judge who had doubts concerning his mental status at the time of the offense. This court found the same argument now presented insufficient to indicate that the presiding judge should be recused from the RCr 11.42 hearing. We issued an order dated April 12, 1982 to that effect. Gall has presented insufficient evidence to warrant reversal of that decision.

■ Gall's ninth argument is that his Fifth Amendment rights were violated when the Commonwealth, in the RCr 11.42 hearing cross-examined Gall on matters not covered on direct examination. Gall maintained his right to a Fifth Amendment privilege and refused to answer the questions. This argument is without merit since Gall's conviction had already been upheld on appeal and at the time of his collateral post-conviction RCr 11.42 proceeding, he was not entitled to invoke the privilege against self-incrimination. *Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960); *United States v. Heldt*, 668 F.2d 1238, (D.C.Cir.1981) cert. den. 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

Gall's tenth argument is that the trial court abused its discretion in denying his motions to provide funds for expert witnesses in the RCr 11.42 hearing. We are not convinced that the trial court abused its discretion in denying funds for appointment of the plethora of expert witnesses that Gall requested in an effort to prove his ineffective assistance of counsel claim. *Young v. Commonwealth*, Ky., 585 S.W.2d 378 (1979).

Gall's eleventh argument is that this court arbitrarily disposed of the issues raised by Gall on direct appeal, *see Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980). Gall requests that our decision should be reexamined in light of subsequent cases. We thoroughly reviewed the record and exhaustively treated each of Gall's arguments on direct appeal. There is no need to reexamine that decision.

■ Gall's twelfth argument is that the trial court erroneously refused to review this court's denial of access to death penalty data to Gall. In effect, Gall was asking the circuit court for relief from a ruling of this court. This court is the only proper forum to litigate the question of accessibility to this court's data. *Ex Parte Farley*, Ky., 570 S.W.2d 617 (1978).

Gall's thirteenth argument is that he was not allowed to present evidence on search

and seizure, jury compositions, venue and discovery in proving his ineffective assistance of counsel claim. This claim is without merit since we have concluded that sufficient evidence was allowed in the RCr 11.42 hearing to resolve that issue.

Gall's fourteenth argument is that the trial court erred in refusing Dr. Noelker's opinion regarding Dr. Lanter's competency. The issue raised in the RCr 11.42 was whether Counselor Zevely was negligent. Zevely cross-examined Dr. Lanter thoroughly at a mid-trial hearing before the judge on Gall's competency. The argument that the court's refusal to allow Dr. Noelker to testify as reflective of Counselor Zevely's alleged negligence is illogical and without merit.

Gall's fifteenth argument is that counsel's failure to elicit information from Gall's mother concerning Gall's being molested as a child. The testimony was inadmissible hearsay since Mrs. Gall never saw any molestation.

Lastly, Gall argues that his RCr 11.42 motion should be granted because the prosecutor erroneously told the jury that its sentence was a recommendation. We considered and rejected this argument on Gall's direct appeal. 607 S.W.2d 97 (1980). Our ruling adheres to this appeal as well.

The judgment of the Boone Circuit Court denying Gall's RCr 11.42 motion is affirmed.

All concur.

STEPHENS, C.J., not sitting.