# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0370-MR

JAMES BLAKEMORE                                                                      APPELLANT

V.
ON APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE KEVIN D. BISHOP, JUDGE
NO. 23-CR-00319

COMMONWEALTH OF KENTUCKY                                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

James Blakemore appeals as a matter of right from the Graves Circuit Court's order denying his motion to withdraw his guilty plea without conducting an evidentiary hearing. He asserts that his plea was involuntary, and that counsel rendered ineffective assistance. Upon review, we conclude the circuit court did not err in denying the motion without an evidentiary hearing. The record demonstrates the plea was entered knowingly, voluntarily, and intelligently; the allegations of ineffective assistance of counsel are conclusory or refuted by the record. Accordingly, we affirm.

## I. BACKGROUND

On August 3, 2023, three people were shot with a .380 handgun inside a white Chevrolet Tahoe – one in the head, another in the chest, and a third in the arm. Each was also struck with the handgun. The third victim was also

strangled when a seatbelt was wrapped around her neck. The handgun was thrown into a dumpster. Blakemore eventually surrendered to the police and admitted to committing these offenses. He identified where the handgun was located and the clothing he wore. Investigators found cartridge cases, a live round, a handgun magazine, a hollowed-out cigar filled with marijuana, and a suspected marijuana synthetic referred to as "spice." Victim C.B. was rendered quadriplegic; victim J.J. lost an eye and suffered a traumatic brain injury resulting in mental deficiencies, depression, and seizures; and Victim T.B. was shot in the arm and strangled with the seatbelt while verbally threatened. These facts are undisputed.

Blakemore was indicted for three counts of first-degree assault, three counts of second-degree assault, first-degree strangulation, possession of a handgun by a convicted felon, tampering with physical evidence, third-degree terroristic threatening, and for being a first-degree persistent felony offender (PFO I). At a mediation presided by a retired judge on April 25, 2024, attended by Blakemore's original counsel from the Department of Public Advocacy's Office, Blakemore, and the prosecutor, the parties reached a proposed plea agreement. The proposed plea agreement recommended 20 years for the first two counts of first-degree assault, amended the third count to second-degree assault, 10 years, and all other remaining charges to be served concurrent for a total recommended sentence of 50 years. He would be eligible for parole after 20 years.

On April 29, 2024, Blakemore pleaded guilty pursuant to that agreement. The trial court conducted a full and thorough plea colloquy, consistent with *Boykin v. Alabama*, 395 U.S. 238 (1969), during which Blakemore affirmed under oath that he was competent to proceed, understood the charges, and was entering the plea voluntarily, among other things.

Blakemore admitted to shooting J.J. in the head, shooting C.B. in the chest, and T.B. in the arm. His testimony included being under the influence of "spice" and "hallucinating" at the time of the offense but confirmed that he was not impaired during the plea. He admitted to two prior felonies, grabbing the victim by the neck, and wrapping the seatbelt around her neck. He apologized to the victims, their families, and his own family.

During the plea colloquy, Blakemore asked the court to clarify parole eligibility after twenty years. The judge directed the prosecutor to answer Blakemore's question on the record. The prosecutor replied, "By law, he is entitled to parole after twenty years, . . . after 20 years he can go before the Parole Board. Because no one has died, not a capital offense, and, even if he were to plead to a life sentence, he would have a shot at parole, a shot at parole after twenty years by law." The court confirmed with Blakemore that this answered his question, and he replied, "Yes, sir."

Subsequent to his plea entry, Blakemore sought to bring an ineffective assistance of counsel claim, concerned the only way he would be worse off than he was would be had he gone to trial and got life, despite participating in mediation, the ultimate indictment having fewer than the original charges,

3

allowing sentences to run concurrently, and the benefit of avoiding trial. Prior to the June 23rd motion to withdraw his plea, conflict counsel was assigned to represent Blakemore in the remainder of the proceedings. On June 24, 2024, the parties appeared for final sentencing. Defense counsel informed the court of Blakemore's motion to withdraw his guilty plea that had been filed the day before. The court continued sentencing until later that day to review the motion and hear arguments. After review, the court denied both the motion to withdraw and the request for an evidentiary hearing, finding that the plea was entered knowingly, voluntarily, and intelligently and nothing on the record or in the motion contradicted that finding. Final sentencing was rescheduled to July 8, 2024, to provide defense counsel an opportunity to review the Pre-Sentence Investigation (PSI).

On July 1, 2024, Blakemore filed a motion to reconsider, again requesting an evidentiary hearing.[1] A joint evidentiary hearing and sentencing were scheduled for July 8, 2024, pending review of the motion for reconsideration. On July 8, 2024, the court required more time to review the additional pleadings. As the court proceeded to set this matter for final sentencing, the court noted concern over setting the final sentencing date on or subsequent to July 15, due to the potential impact of House Bill 5 which would

---

[1] The record reflects that Blakemore's counsel titled this motion to reconsider pursuant to RCr 59.05. There being no Kentucky Rules of Criminal Procedure 59.05, the trial court treated the motion as a motion to reconsider under the corollary Kentucky Rule of Civil Procedure 59.05. In all other ways, this pleading met the requirements of RCr 8.14. As such, the judge properly addressed the motion.

go into effect on that date. Conflict counsel advised the court that she had done her due diligence in reference to HB 5, and that Blakemore was aware of any risks. The court then set final sentencing for July 12th.

On July 12th, the court heard the arguments on the motion to reconsider. During the hearing, the judge recited the procedural history of the case including the original indictment, the mediation attended by the parties and overseen by a retired judge, the defendant's *Boykin* colloquy of guilty pleas, the last-minute motion to withdraw the pleas on the Sunday prior to sentencing, the details of the plea colloquy and the timeline of the proceeding motions. The court found the sworn oath and the entering of the plea were done knowingly, intelligently, and voluntarily. The court also found that Blakemore's stated satisfaction with representation, the admission of his crimes, the acknowledgement he was not under the influence at the time of the pleas, and his acknowledgement he was not suffering from any mental deficiencies at the time of the plea colloquy were convincing.

The court emphasized the sworn statements during the plea hearing were credible and that Blakemore's plea had been entered knowingly and voluntarily. The court concluded that Blakemore's later assertions were inconsistent with the record.

Further facts will be developed below as needed.

## II. STANDARD OF REVIEW

A trial court's decision to deny a motion to withdraw a guilty plea is reviewed for abuse of discretion. *Stoker v. Commonwealth,* 289 S.W.3d 592, 598

5

(Ky. App. 2009). A court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Whether a plea was knowing, voluntary, and intelligent requires an evaluation of the totality of the circumstances. *Bronk v. Commonwealth*, 58 S.W.3d 482, 486-487 (Ky. 2001). The trial court is in the best position to discern the totality of the circumstances. *Williams v. Commonwealth,* 229 S.W.3d 49, 53 (Ky. 2007). This is an inherently factual inquiry reviewed for clear error. *Bronk*, 58 S.W.3d at 489. Claims of ineffective assistance are evaluated under *Strickland v. Washington,* 466 U.S. 668 (1984), as adopted in Kentucky in *Gall v. Commonwealth*, 702 S.W.2d 37, 39 (Ky. 1985). The appellant must demonstrate both (1) that counsel's performance was deficient and (2) that the deficiency prejudiced the defense.

## III. ANALYSIS

Blakemore asserts that his plea was involuntary and the product of ineffective assistance by counsel. He argues the trial court erred in denying his pre-sentence motion to withdraw the plea without an evidentiary hearing. We disagree.

**A. Graves Circuit Court Did Not Err in Denying Blakemore's Motion to Withdraw His Plea.**

Blakemore contends the circuit court erred by denying his Kentucky Rule of Criminal Procedure (RCr) 8.10 motion without an evidentiary hearing. An evidentiary hearing is required only when the defendant's motion raises

6

material issues of fact that are not conclusively refuted by the record. *Fraser v. Commonwealth*, 59 S.W.3d 448, 452-53 (Ky. 2001). The record here, including the detailed plea colloquy and written plea form, shows that Blakemore affirmed under oath that his plea was voluntary, that he understood the consequences, and that no one coerced or misled him. The motion had been filed on the day before the sentencing hearing, a Sunday, so recess was taken to allow a thorough review. The trial court then explicitly reviewed the plea colloquy and permitted the Commonwealth to respond to Blakemore's motion before ruling.

The court found that the allegations in the motion to withdraw were contradicted by Appellant's prior sworn statements and that the motion presented no factual basis requiring a hearing.

Because the court reviewed the record, heard arguments, and articulated sound reasons for denial, its ruling was not arbitrary or unreasonable. Accordingly, there was no abuse of discretion.

### 1. Voluntary Plea

Due process requires that a guilty plea be entered voluntarily, knowingly, and intelligently. *Boykin*, 395 U.S. at 242–43. RCr 8.08 codifies this requirement. A plea is involuntary if the defendant was misinformed about its direct consequences or coerced, or if he lacked the capacity to understand the proceedings. *Commonwealth v. Pridham,* 394 S.W.3d 867, 876 (Ky. 2012). As the Court explained in *Edmonds v. Commonwealth*, 189 S.W.3d 558, 568 (Ky. 2006), when the record demonstrates an extensive colloquy between the court

7

and the defendant confirming the defendant's understanding of the charges and sentencing implications, there is substantial evidence to support a trial court's determination that a plea was voluntary and intelligent.

The authorities upon which Blakemore relies ultimately reinforce the trial court's decision to deny a hearing. While neither the "magic words" uttered during a plea colloquy automatically establish that the guilty plea was entered knowingly, intelligently, and voluntarily, neither do the "magic words" of an RCr 8.10 motion alleging the opposite automatically entitle a defendant to an evidentiary hearing. See *Woodall v. Commonwealth*, 63 S.W.3d 104, 132 (Ky. 2001), *as amended* (Jan. 15, 2002). (emphasizing that voluntariness must be assessed from the totality of the circumstances rather than from formalistic language).[2] The question is not whether particular ritual phrases were used, but whether the record as a whole demonstrates that the plea was the product of an informed, deliberate choice. Likewise, *Russell v. Commonwealth*, 495 S.W.3d 691, 695 (Ky. 2016), and *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10–11 (Ky. 2002), make clear that bare assertions that a plea was not knowingly or voluntarily entered—unsupported by specific factual allegations

---

[2] Woodall claimed his guilty plea was invalid because it was not a knowing, voluntary, and intelligent waiver of his constitutional rights and was entered involuntarily because of Woodall's low intelligence and the impairment of Woodall's counsel. Because the necessary affirmative showing in the record demonstrated the plea was intelligently and voluntarily made and no convincing evidence demonstrated counsel was impaired, this Court held "[t]there is nothing in the record to indicate that he did not have a full and complete understanding of his rights and that he voluntarily chose to plead guilty." The court referenced "Woodall specifically answered the questions of the court regarding the voluntariness of the plea in the affirmative on three different occasions. It is clear that Woodall understood all the consequences of his plea."

8

and contradicted by the record—do not require an evidentiary hearing. In each instance, the court must consider the *totality of the circumstances*, including the thoroughness of the plea colloquy, the defendant's sworn representations, and the absence of credible factual disputes.

This reasoning sits squarely with *Fraser*, which instructs that an evidentiary hearing is required only when a motion presents material issues of fact that cannot be resolved from the existing record. 59 S.W.3d at 452-53. When, as here, the record refutes allegations of involuntariness or ineffective assistance, the trial court acts within its discretion in denying a hearing.

> **Court**: Do you swear or affirm the testimony you are about to give is the whole truth and nothing but the truth?
> **Blakemore**: Yes, sir.

After stating his name and date of birth (which needed to be corrected on the paperwork), among other factual details, the colloquy continued:

> **Court**: How much education do you have?
> **Blakemore**: I have vocational training in welding. I have my GED.
> **Court**: What is the last full grade of school you went through?
> **Blakemore**: Um, the last full grade was tenth grade.
> **Court**: Alright, with that, and with the GED, you can read and write and understand the English language, correct? [Blakemore nodded his head] I need a verbal answer.
> **Blakemore**: Yes
> **Court**: And sir, have you ever suffered from any mental defect or disability in the past that affects your ability to think and reason?
> **Blakemore**: I don't think so
> **Court**: Never been diagnosed with anything in the past.
> **Blakemore**: Yeah.
> **Court**: Does that diagnosis affect your ability to understand what you are doing today?

9

**Blakemore**: No.

[. . . ]

**Court**: And sir, you understand what you are doing today looks like you are entering into some sort of plea agreement, is that your understanding?

**Blakemore**: Yes sir.

The original indictment was read.

**Court**: Has Ms. Carroll here explained to you the nature of the charges, the penalties they carry, and any possible defenses?

**Blakemore**: Yes.

**Court**: Sir, I have been handed a motion to enter a plea of guilty form, I will set that out and ask you to verify that is your signature there. I need a verbal answer.

**Blakemore**: Yeah.

**Court**: And you went over that with Ms. Carroll before you signed it?

**Blakemore**: Yes

[. . . ]

**Court**: Did you understand everything on this form as far as your constitutional rights?

**Blakemore**: Yeah.

**Court**: And did you understand the consequences of becoming a convicted felon as spelled out on this form.

**Blakemore**: Yes, sir.

**Court**: Alright, sir, your constitutional rights. I'm going to highlight them to you even though you understood what was on here.

The court went on to explain the right to trial by jury and the rights, to not incriminate oneself, to call witnesses, to put on one's own evidence, and that if a jury trial was held, Blakemore would have the right to appeal to a higher court. Further, the court explained that by pleading guilty today he was waiving all these constitutional rights. The plea colloquy reflects that Blakemore fully understood the nature of the charges, the potential penalties, and the constitutional rights he was waiving. The court's direct exchange

10

concerning parole eligibility clarified any confusion, and Blakemore confirmed that he understood the court's explanation.

Here, as in *Edmonds*, "[t]here is substantial evidence to support the trial court's determination that the plea was voluntary and intelligent. The extensive exchange on the record, recounted above, between the trial court and Appellant prior to his plea constitutes substantial evidence that Appellant was aware of the sentencing implications and was making a voluntary and intelligent plea." *Id.* at 568. Compliance with RCr 8.08 creates a strong presumption that a plea is voluntary.

> "[I]f the information given by the court at the [plea] hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992); see also *United States v. D'Angelo*, 172 F.3d 1046, 1047–48 (8th Cir. 1999) (holding that defendant's reliance on incorrect legal advice did not automatically warrant withdrawal of guilty plea); *United States v. Mahler*, 984 F.2d 899, 902 (8th Cir. 1993) (holding defendant not entitled to withdraw guilty plea because he was under a misapprehension regarding sentence range); *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (holding misunderstanding regarding whether defendant would be probated did not require withdrawal of guilty plea). "Like the Supreme Court in *Fontaine v. United States*[, 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973)], **we recognize that a defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge**." *Todaro*, 982 F.2d at 1030 (citations and quotations omitted).

*Edmonds v. Commonwealth*, 189 S.W.3d 558, 568 (Ky. 2006) (emphasis added).

So too here. Blakemore understood the nature of the charges, the sentencing range, and the rights he was waiving. Blakemore's subsequent

11

assertion that he misunderstood parole eligibility is insufficient to overcome that presumption. The trial court accurately stated the applicable law and there is no indication that the plea agreement or the Commonwealth's representations were misleading. In this situation, the trial court considered the motions, the arguments, and the motion for reconsideration. The plea colloquy and record support the circuit court's finding that Blakemore's plea was entered knowingly, intelligently, and voluntarily. As such, we conclude the trial court's finding of voluntariness resulting in the denial of an evidentiary hearing was supported by substantial evidence and, therefore, not clearly erroneous.

In *Rodriguez,* which references that "**[g]enerally,** an evaluation of the circumstances supporting or refuting claims of coercion and ineffective assistance of counsel requires an inquiry into what transpired between attorney and client that led to the entry of the plea, **i.e., an evidentiary hearing**," the court in *Rodriguez* "did not conclude an evidentiary hearing on Appellant's motion was unnecessary but only that it was precluded by Appellant's refusal to execute a written waiver of his lawyer-client privilege." *Rodriguez v. Commonwealth,* 87 S.W.3d 8, 11 (Ky. 2002) (emphasis added). Unlike *Rodriguez,* the trial court in this case **did** evaluate the circumstances and claims and then concluded a formal evidentiary hearing was unnecessary. While a formal evidentiary hearing may be preferable and typically best practice, in this instance where proceedings were paused so Blakemore's motion could be thoroughly addressed, the final sentencing hearing when the

12

court was made aware of the desired withdrawal was rescheduled multiple times to address motions to reconsider and responses to the motions, and final sentencing did not occur until July 12, 2024. An evaluation of the circumstances leading to the entry of the plea is not restricted or confined to the holding of an evidentiary hearing in every instance, as demonstrated here.

## 2. Effective Assistance of Counsel

To prevail on a claim of ineffective assistance, Blakemore must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, he would have insisted on going to trial. *Strickland,* 466 U.S. at 687–88, 694; *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Gall,* 702 S.W.2d at 39. Counsel's performance is judged "in light of all the circumstances." *Id.* Kentucky precedent consistently holds that erroneous advice regarding parole eligibility does not, by itself, render a plea involuntary where the trial court properly admonishes the defendant about the sentence range and the plea is otherwise knowing and voluntary. *Edmonds v. Commonwealth,* 189 S.W.3d 558, 567 (Ky. 2006); *Stiger v. Commonwealth,* 381 S.W.3d 230, 235 (Ky. 2012).

"In the context of guilty pleas, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. The relevant question is whether counsel's alleged deficiency affected the plea decision itself, not whether the outcome (i.e., sentence length) was undesirable, greater than expected, or less desirable in comparison to a fictional potential

13

outcome. Kentucky follows *Hill* explicitly. Adopting *Hill* in *Bronk*, this Court explained:

"When a defendant claims that counsel's ineffectiveness rendered a guilty plea involuntary, the defendant must show both that counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that he would not have pleaded guilty but would have insisted on going to trial." *Bronk*, 58 S.W.3d at 486–87 (citing *Hill*, 474 U.S. at 59). The focus of the prejudice inquiry in the plea context is not whether the sentence would have been different but whether the defendant would have insisted on trial and that the defendant's plea could be deemed knowing and voluntary as a matter of due process provided that the defendant had been advised of the "direct" consequences of the plea. *Pridham*, 394 S.W.3d at 877. The Court continued that even if counsel's advice affected a defendant's sentencing expectations, that is not enough; what matters is whether the plea itself was the product of constitutionally ineffective advice. Thus, even a long sentence, so long as it was clearly understood and voluntarily accepted, does not in itself demonstrate ineffective assistance or involuntariness.

The deficiency prong looks to counsel's performance, not the sentence's severity, and the prejudice prong looks to whether the defendant would have chosen trial instead of pleading guilty. The alleged ineffective assistance of counsel did not induce the plea itself.

The trial court accurately explained parole eligibility, curing any misunderstanding. Nothing in the record suggests a reasonable probability

14

that, but for the alleged misinformation, he would have rejected the plea and proceeded to trial. The record, neither during the hearings nor articulated in the motions, provides sufficient indication that advice fell below an objective standard of reasonableness. Therefore, there was no ineffective assistance of counsel; hence Blakemore's plea was properly entered.

## IV.  CONCLUSION

The record establishes that Blakemore's plea was entered voluntarily, knowingly, and intelligently with the effective assistance of counsel. The circuit court did not abuse its discretion in denying the pre-sentence motion to withdraw the plea without conducting an evidentiary hearing. Accordingly, the judgment of the Graves Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller, and Nickell, JJ., concur. Thompson, J., dissents by separate opinion.

THOMPSON, J., DISSENTING: It should be a rare situation in which an evidentiary hearing is not required when a defendant asks to withdraw his guilty plea prior to sentencing and alleges affirmative misadvice rendered his plea involuntary. This is not that rare situation and, therefore, I would reverse for an evidentiary hearing to develop whether counsel should have investigated James Blakemore's potential trial defenses before advising him to enter a plea which resulted in a fifty-year-sentence.

It is undisputed that Blakemore shot his three friends without provocation, and they suffered serious injuries; one friend was rendered a paraplegic, and another suffered a traumatic brain injury, lost an eye and

15

ended up with a plate in his head. What is disputed is why he shot them and whether he had any defense which would either excuse or mitigate his conduct.

On April 25, 2024, Blakemore entered into a plea agreement in which he would receive fifty years of incarceration to resolve all the charges against him.

The plea colloquy was held on April 29, 2024. Blakemore answered all questions appropriately to indicate that he intelligently and voluntarily entered his guilty plea. During the plea colloquy, in response to his inquiry, the Commonwealth Attorney informed Blakemore that he would be eligible for parole after serving twenty years of his sentence and that Blakemore's parole eligibility would remain the same—after twenty years—even if he were to receive a life-sentence.[3]

The factual basis Blakemore provided for his plea was that he was in a vehicle with the victims, was smoking spice, had a bad reaction and was hallucinating. He stated, "I believed things that were not true," when he shot all three of the victims, grabbed one victim around the neck with a seatbelt and struck another victim in the head. He expressed his remorse and apologized for his actions. For each charge, the required mental state was that he committed the crimes "knowingly and intentionally."

On June 23, 2024, the day before his sentencing hearing was scheduled, Blakemore filed a motion to withdraw his guilty plea through conflict counsel.

---

[3] This was an accurate interpretation of the version of Kentucky Revised Statutes (KRS) 532.046 which was in effect at the time Blakemore committed his crimes. *See Hughes v. Commonwealth*, 87 S.W.3d 850, 855–56 (Ky. 2002).

16

Conflict counsel represented that "[d]uring the first meeting with conflict counsel and at every subsequent meeting, Mr. Blakemore has adamantly requested that his plea be withdrawn."

Blakemore argued that his guilty plea was not made freely, intelligently, and voluntarily. He stated that he was not informed about parole eligibility by counsel, believed he was facing consecutive life sentences, and he was suffering "extreme mental and emotional duress and confusion at the time of his guilty plea and overcome by the pressures of his family and attorneys to plead guilty."

Blakemore argued his trial counsel provided ineffective assistance of counsel by failing to investigate his case adequately and completely. Blakemore alleged that his trial counsel failed to investigate the possibility of an extreme emotional disturbance (EED) defense (despite the supporting evidence within the case itself and supplied by Blakemore) and failed to explore the significant mitigation evidence. He explained that trial counsel failed to collect any records or hire any experts to investigate whether he might have an EED defense. He reiterated that he entered his plea under the mistaken belief that he was facing multiple consecutive life sentences at trial and his trial counsel did not accurately and completely explain to him the risks and benefits of going to trial. Specifically, he alleged that his trial counsel did not explain that accepting an offer for fifty years would place him at the same parole eligibility as receiving multiple life sentences and trial counsel incorrectly advised him that the life sentences could be run consecutively.

Blakemore stated that his counsel's "investigative deficiencies alone demonstrate that counsel's performance fell outside the range of professionally competent assistance" and counsel's failure to accurately advise him on the risks and benefits of accepting an offer versus going to trial demonstrates that "a reasonable probability exists that but for the deficient performance of counsel Mr. Blakemore would not have [pled] guilty and [would have] proceeded to trial." He requested an evidentiary hearing be held for the trial court to explore the totality of the circumstances surrounding his guilty plea.

To the extent that Blakemore's eligibility for parole after twenty years was the key reason for him agreeing to the plea bargain rather than proceeding to trial, his plea bargain provided him without any benefit in that regard as he would be eligible for parole after serving twenty years regardless of whether he received a fifty-year sentence, a seventy-year sentence, or a life sentence.

On June 24, 2024, the trial court held a hearing on Blakemore's motion. During the hearing, the trial court stated that it would not explore what Blakemore might have been told during mediation as it was a "court of record" and it was instead focusing on the plea colloquy. The trial court stated the plea colloquy was more than extensive and that given Blakemore's answers at that time which refuted that Blakemore was suffering emotional distress and confusion, and the explanation of the Commonwealth about parole eligibility, it was finding that Blakemore pled guilty of his own free will.

In a docket order the trial court memorialized its denial of the motion to withdraw on the following grounds:

18

(1) what was said at mediation – no record

(2) emotional duress and confusion at time of plea colloquy. Court finds [Blakemore] answered all questions appropriately and acknowledged what he did during plea colloquy and was advised of parole eligibility.

On July 1, 2024, Blakemore's conflict counsel filed a motion to reconsider, again requesting an evidentiary hearing, and attached the affidavit of the Department of Public Advocacy's Western Regional Manager regarding his meeting with Blakemore's trial counsel. The Regional Manager stated that Blakemore's trial counsel admitted that she did not explain to Blakemore that life sentences automatically run concurrently and there is no difference in parole eligibility between a fifty-year sentence and a life sentence. Trial counsel also admitted she did not investigate a potential EED defense where she knew that Blakemore had recently lost a child and believed that his friends were demons trying to harm him, did not hire any experts to evaluate his eligibility for an EED defense, and did not investigate substantial mitigating evidence.

In setting the matter for a hearing, the trial court scheduled the hearing to take place on Friday, July 12, 2024, noting its concern that if Blakemore was not sentenced before July 15, 2024, the effective date of a change in KRS 532.046 pursuant to House Bill 5,[4] he might suffer an "extremely harsh"

_____

[4] 2024 Kentucky Laws Ch. 174 § 32 (HB 5.)

19

penalty and be rendered ineligible for parole, forcing him to serve out his entire sentence.[5]

During the hearing on the motion to reconsider, the Commonwealth urged the trial court to save the defendant from himself and the poor advice of conflict counsel, as delaying sentencing would subject Blakemore to the consequences of the change in the law.

The trial court determined that an evidentiary hearing was not necessary because Blakemore's plea was not involuntary based on its review of the plea colloquy, and that Blakemore's other arguments were more appropriate for a post-conviction motion for ineffective assistance of counsel pursuant to the Kentucky Rules of Criminal Procedure (RCr) 11.42 or the Kentucky Rules of Civil Procedure (CR) 60.02. The trial court then proceeded to sentence Blakemore in accordance with the terms of the plea agreement.

RCr 8.10 provides that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." However,

> the word "may" in RCr 8.10 does not give a trial judge unfettered discretion to deny a motion to withdraw a guilty plea without affording the defendant a hearing on the motion. Our case law is clear that the discretion to deny a motion to withdraw a guilty plea exists only after a determination has been made that the plea was *voluntary.* If the plea was *involuntary,* the motion to withdraw it must be granted.

---

[5] Since that time, the Department of Corrections has interpreted KRS 532.046 as not applying to crimes unless they occurred after its effective date. Before this information was known, a later sentencing could have risked Blakemore not receiving the key benefit of his bargain, parole eligibility after twenty years.

20

*Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002).

"A guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006).

"Generally, an evaluation of the circumstances supporting or refuting claims of coercion and ineffective assistance of counsel requires an inquiry into what transpired between attorney and client that led to the entry of the plea, *i.e.,* an evidentiary hearing." *Rodriguez*, 87 S.W.3d at 11. "[W]here it is alleged that the plea was entered involuntarily the defendant is entitled to a hearing on the motion." *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007).

A defendant's argument that defense counsel failed to appropriately investigate his case before urging him to plead guilty can provide an appropriate basis for holding an evidentiary hearing. *See, e.g., Bronk v. Commonwealth*, 58 S.W.3d 482, 484-86 (Ky. 2001) (appeal after evidentiary hearing regarding various claims of ineffective assistance of counsel, including failure to investigate); *Commonwealth v. Tigue*, 459 S.W.3d 372, 381, 393-97 (Ky. 2015) (concluding after an evidentiary hearing, that counsel was ineffective for failure to investigate, among other errors, resulting in prejudice, and rendering plea invalid).

However, an evidentiary hearing is not required where the defendant only raises conclusory allegations unsupported by specifics, or the allegations are refuted by the record. *Edmonds*, 189 S.W.3d at 569.

21

Blakemore's argument that his plea was involuntary due to his counsel failing to advise him that he would be eligible for parole after twenty years if he were sentenced to any term of years of twenty years or longer, or if sentenced to life, fails because any misadvice or inadequate advice he received was corrected during his plea colloquy. As explained in *Edmonds*, if misadvice is corrected prior to the entry of a plea, it cannot render a plea involuntary. *Id.* at 568. This is because it is unreasonable to rely on the prior misadvice after correction.

Blakemore specifically asked for assurance that in entering his plea he would be eligible for parole after twenty years. The Commonwealth Attorney stated that this was correct and further clarified that Blakemore's parole eligibility would remain the same whether he was sentenced to fifty years or received a life sentence. Blakemore confirmed that this response answered his question and did not express any hesitation afterwards in entering his plea.[6]

I am similarly not convinced that Blakemore has sufficiently pled that his belief that he was subject to consecutive life sentencing would have any effect on the total length of time he would serve. I also agree that the trial court could properly find that the plea colloquy refuted Blakemore's argument that he was

---

[6] This last-minute correction certainly did not give Blakemore much of an opportunity to determine if it changed his calculus in entering the plea, but he also did nothing to indicate that he needed more time to consider his options and also failed to ask to pause and confer with his attorney.

suffering from emotional distress and confusion as his answers indicated that he was voluntarily entering into the plea.[7]

However, Blakemore's argument that the ineffective assistance of counsel he received rendered his plea involuntary where possible defenses and options for mitigation were not explored and he was pressured into pleading guilty because he had no other options, was not refuted by the record. Such allegations, while not fully developed, standing alone were sufficient to require an evidentiary hearing.

The trial court failed to make any finding that Blakemore's claims of ineffective assistance of counsel regarding failure to investigate defenses, as further supported by the affidavit, and mitigation were facially deficient and instead determined that they should not be considered in his RCr 8.10 motion. In making such determination, the trial court failed to follow well-established controlling precedent requiring that such claims may properly be considered in a motion to set aside a plea of guilty. In *Rodriguez*, 87 S.W.3d at 11–12, we stated unequivocally that it was incorrect that claims of ineffective assistance of counsel can only be raised in a collateral attack via RCr 11.42, explaining "nothing precludes raising the issue . . . in a motion to set aside a plea of guilty so long as there is sufficient evidence in the trial record or adduced at a post-

---

[7] Blakemore may well have been suffering from emotional distress and confusion at the time he agreed to accept the offer negotiated at mediation, but he did not indicate that his distress and confusion was present at the plea hearing.

23

trial evidentiary hearing to make a proper determination." Therefore, in *Rodriguez*, we reversed and remanded for an evidentiary hearing. *Id.* at 12.

I recognize that the trial court had the best of intentions when it chose to deny Blakemore's request for an evidentiary hearing in an attempt to save him from the potential consequences resulting from the effective date of House Bill 5. If this played any role in the trial court's decision, that would clearly be inappropriate where conflict counsel explained she had advised Blakemore of the possible risks, and he still wished to withdraw his plea. A defendant has a right to make a decision that others may view as risky and imprudent—when exercising fundamental rights such as whether to proceed to trial or accept a plea, to testify or not, or to accept the assistance of counsel or waive the right to counsel. *See Quarels v. Commonwealth*, 142 S.W.3d 73, 78-80 (Ky. 2004) (confirming that the defendant's right to testify at trial is a personal and constitutional right even if counsel believes such action to be foolish and detrimental to the defense); *Marks v. Commonwealth*, 555 S.W.3d 462, 467 (Ky. App. 2018) (observing that "[t]he Commonwealth may be correct that [the defendant] is a foolish man for attempting to withdraw a favorable plea deal and his fate may be far worse . . . if he is tried before a jury" but recognizing that "the decision to withdraw the plea is his").

The majority opinion focuses its analysis of Blakemore's allegation that he received ineffective assistance of counsel on whether the *Strickland v. Washington*, 466 U.S. 668 (1984), standard was met. The majority opinion relies on *Bronk,* in applying *Strickland*. However, *Bronk* was before us on a

24

different procedural posture. Bronk had already received an evidentiary hearing, and we were reviewing the trial court's factual findings and conclusions of law, based on the evidence the trial court received at that hearing.

A *Strickland* inquiry is premature at this stage. Blakemore was only required to allege relevant errors and prejudice at this juncture to establish his right to an evidentiary hearing. He did so, alleging both error and prejudice, and specifically stating that if not for counsel's poor advice which was rooted in a failure to investigate possible defenses, there was a reasonable probability that he would have insisted on going to trial. He did not need to establish, prior to receiving an evidentiary hearing, that error and prejudice in fact occurred.

I conclude that Blakemore has satisfied the standard for obtaining an evidentiary hearing. Had the majority agreed with me, it would not be until after an evidentiary hearing was held, that a determination could properly be made as to whether he was able to establish the requisite standard to obtain relief in the form of being allowed to withdraw his plea of guilty.

I do not opine as to the probable results of such a hearing. If there were to be a realistic opportunity to develop any kind of defense to culpability, Blakemore might well have wished to "roll the dice" on a trial, not seeing much difference between a potential life sentence compared to the possibility of having to serve out a fifty-year sentence.

As the majority has affirmed Blakemore's conviction and sentence, he is now free to pursue redress through RCr 11.42. Rather than delay matters

25

further by requiring Blakemore to pursue an RCr 11.42 motion, I would simply reverse and remand for an evidentiary hearing now.

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Kentucky Attorney General

James Havey
Assistant Attorney General